**v.**

**Frederick L. BARNES, III, Sean A. Keblen, Jennifer Grasso, Susan Schmidt, Division of Youth Rehabilitative Services, and Division of Prevention and Behavioral Health Services, Defendants.**

C.A. No. N10C–09–171 JRS.

Superior Court of Delaware, New Castle County.

Submitted: June 6, 2011.
Decided: June 17, 2011.
Corrected: Aug. 3, 2011.

See also 2010 WL 2635544.

906

Daniel P. Bennett, Esquire and Dennis A. Mason, II, Esquire. Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP, Wilmington, Delaware. Attorneys for Plaintiff.

Ralph K. Durstein, III, Esquire, Deputy Attorney General. Attorney for Defendants.

## OPINION

SLIGHTS, J.

### I.

In this opinion, the Court considers a Motion to Dismiss filed by Defendants, Frederick L. Barnes, III, Sean A. Keblen, Jennifer Grasso, Susan Schmidt, Division of Youth Rehabilitative Services ("DYRS") and Division of Prevention and Behavioral Health Services ("DPBHS") (collectively "Defendants") in which the Defendants allege that Plaintiff's claims are barred by principles of *res judicata*, claim splitting, sovereign immunity and qualified immunity. Plaintiff, "J.L.," [1] alleges that she was physically and emotionally injured after a juvenile in the Defendants' care and custody brutally raped her. She alleges that the rape occurred as a proximate result of the Defendants' negligent and grossly negligent supervision of the juvenile.[2] Upon careful consideration of the motion and the responses thereto, the Court has determined that Plaintiff's claims against DYRS

---

1. The Court has permitted the Plaintiff to file her complaint using a pseudonym.

2. Compl. 50–69.

and DPBHS are barred by sovereign immunity. Defendants' motion to dismiss, as to these claims, must be **GRANTED.** Moreover, Plaintiff has improperly split her claims by filing separate actions in this court and in the federal court arising from the same alleged conduct and the same injuries for which she seeks the same compensation in both actions.[3] For the reasons stated herein, the Court will not dismiss these claims at this time but will order a stay of their prosecution in favor of the federal court action. Defendants' motion to dismiss, as to these claims, is **DENIED.**

## II.

The violent attack upon the Plaintiff that gives rise to this action was the culmination of a series of disturbing incidents involving a troubled juvenile ("T.H.") who had received counseling and rehabilitation services through the State of Delaware intermittently since the age of five.[4] In April of 2004, then twelve year old T.H. was arrested and charged with assault third degree after attacking a fellow student while on a class trip. Upon being adjudicated delinquent, T.H. was placed under the control and supervision of DYRS and DPBHS.[5] From April 2004 through September 2008, T.H. was arrested, charged and/or adjudicated delinquent of various offenses on no less than ten occasions, including the offenses of assault, robbery, burglary, offensive touching,

criminal trespass, felony theft, criminal mischief and disorderly conduct.[6] Several of these offenses involved crimes of violence against young women.[7]

During the time period leading up to T.H.'s assault upon the Plaintiff, T.H. (under the custody and care of DYRS) was enrolled as a student at The Central School, a facility servicing minors with special educational, behavioral and disciplinary needs.[8] While attending The Central School, Defendants permitted T.H. to participate as a player on Dickinson High School's varsity football team for the 2008 season.[9]

T.H.'s violent behavior escalated in the early fall of 2008. The first of several incidents occurred late in the evening on September 11, 2008, when T.H., while residing with his mother, broke into the residence of a 13 year-old girl where he fondled, strangled and sexually assaulted her.[10] As a result of this incident, T.H. was arrested and placed in Fiske Academy at Camelot, a detention center operated through a contract with DYRS.[11] Shortly after being placed in this facility, T.H. assaulted a fellow Camelot resident.[12]

On September 23, 2008, the Family Court scheduled a hearing in the case relating to the September 11, 2008 assault in order to address issues regarding T.H.'s ongoing placement and supervision.[13] At the request of DYRS and DPBHS, the hearing was continued.[14] Later that after-

---

3. As discussed below, the Court rejects Defendants' remaining grounds for dismissal of the Complaint.

4. Pl.'s Ans. Br. at 6.

5. Compl. ¶ 16.

6. *Id.* at 17.

7. *Id.*

8. *Id.* at 21–24.

9. *Id.* at 25.

10. *Id.* at 27.

11. *Id.*

12. *Id.* at 32.

13. *Id.* at 34.

14. *Id.*

noon, T.H. was transported to Dickinson High School by DPBHS so that he could participate in football practice.[15] Plaintiff, a second-year graduate student at the University of Delaware, was engaged in an externship at the high school as an assistant athletic trainer, a position that required her to work with Dickinson's football team.[16] Following practice, T.H. snuck into the coach's locker room and brutally assaulted and raped Plaintiff.[17] T.H. was subsequently convicted of rape first degree and assault third degree and is currently incarcerated at the James T. Vaughn Correctional Center in Smyrna, Delaware.[18]

Plaintiff initially pursued compensation for her injuries in the United States District Court for the District of Delaware by filing a civil complaint against DYRS, Carlyse Giddins (Director of DYRS) (collectively "DYRS Defendants"), Byron Murphy (principal of John Dickinson High School), Michael Simmonds (principal of The Central School), and the Red Clay Consolidated School District (collectively the "School District Defendants"), along with Diamond State Youth, Inc. and the New Behavioral Corporation. Plaintiff alleged that each of the defendants played a role in the negligent or grossly negligent care and/or supervision of J.L. in a manner that allowed J.L. to rape and assault her.[19]

By opinion and order dated June 28, 2010, the District Court dismissed (without prejudice) the claims against the DYRS Defendants as raised in Counts VI (negligence) and VII (gross negligence/wanton disregard) of the District Court complaint.[20] The court held that the DYRS Defendants must be dismissed "pursuant to the Eleventh Amendment and the doctrine of sovereign immunity."[21] The claims against the remaining defendants were not dismissed and are pending in the District Court.[22]

In this action, Plaintiff renews her claims against DYRS and, for the first time, names defendants, Barnes (a caseworker and probation officer with DYRS), Keblen (a caseworker and supervisor at DYRS), Grasso (a caseworker and mental health counselor with DPBHS) and Schmidt (a mental health counselor and supervisor with DPBHS) (collectively the "individual defendants"), for alleged negligent and/or grossly negligent actions or failures to act that allegedly led to the brutal attack and rape of the Plaintiff on September 23, 2008.[23]

## III.

### A. Defendants' Contentions

As a preliminary matter, Defendants contend that references by Plaintiff in her response papers to matters outside of the pleadings should not (as Plaintiff argues) convert the Motion to Dismiss into a Motion for Summary Judgment. While the Defendants acknowledge the Court's broad discretion to treat a motion to dismiss as a

---

15. *Id.* at 39.

16. *Id.* at 40.

17. Pl.'s Ans. Br. at 10.

18. Compl. 47.

19. *See J.L. v. Murphy*, 2010 WL 2635544 (D.Del. June 28, 2010).

20. App. Pl.'s Ans. Br. at Ex. A. *See also J.L.*, 2010 WL 2635544, at *4–5.

21. *J.L.*, 2010 WL 2635544, at *5. (citation omitted) ("[W]here the state claims are against the agency or official in their official capacity ... the Eleventh Amendment bars the exercise of federal jurisdiction and supplemental jurisdiction over the par[ties].").

22. Hr'g Tr. on Mot. Dismiss Feb. 4, 2011 at 50–51; App. Pl.'s Ans. Br. at Ex. A.

23. Compl. 2–15.

motion for summary judgment when matters outside the pleadings are submitted to the court, they urge the Court, nevertheless, to reject Plaintiff's "unilateral attempt [ . . . ] to prevent a ruling as a matter of law by referring to materials outside the record."[24] To this end, Defendants have moved to strike all matters placed in the record by the Plaintiff beyond the Complaint.

Turning to the merits of their motion, Defendants argue that the Complaint must be dismissed because: (1) the claims against DYRS are barred by *res judicata* since the District Court has already addressed and dismissed those claims;[25] (2) the claims are barred by the doctrine of sovereign immunity since the General Assembly has not expressly waived immunity with respect to these claims;[26] (3) the claims are barred by the State Tort Claims Act ("STCA") since Plaintiff's claims arise from conduct performed (or not performed) in their official capacities while exercising their official discretion and no exceptions to qualified immunity (e.g. claims of gross negligence) apply here;[27] (4) the claims are barred by the "public duty" doctrine since Defendants did not owe a duty of special care to Plaintiff to foresee the dangerous acts of third persons and the injury did not arise from a "state created danger;"[28] and (5) the claims are barred by the doctrine of claim splitting since the Plaintiff has improperly sought to split her claim for compensatory and/or punitive damages arising from the injuries she sustained from the assault and rape into two separate cases in different courts.[29]

**B. Plaintiff's Response**

With regard to the Defendants' motion to strike and standard of review arguments, Plaintiff contends that Defendants' motion to dismiss was immediately converted into a motion for summary judgment by virtue of the attachments they submitted with their own motion.[30] According to Plaintiff, by asking the Court to consider the ruling in the District Court on the issue of *res judicata*, and by attaching the affidavit of Deborah Lawhead (Insurance Coverage Administrator of Delaware), Defendants have directed the Court to matters outside of the pleadings and have thereby implicated the summary judgment standard of review.[31] Moreover, Plaintiff contends that the issues raised by Defendants are factually intensive and cannot be resolved without the Court examining a factual record beyond the initial pleadings.[32]

Moving to the merits of the motion, Plaintiff argues that: (1) her Complaint is not barred by *res judicata* because the parties here are not identical to those in the federal action and because the federal action was dismissed without prejudice;[33] (2) insufficient discovery has been conducted to allow her (or the Court) to determine

24. Def.s' Feb. 16, 2011 Letter at 2–3.

25. Def.s' Br. Supp. Mot. Dismiss (Def.s' Mot.) at 7.

26. *Id.* at 9–10.

27. *Id.;* 10 *Del. C.* § 4001 (barring claims against the State or public employees arising from the discretionary performance of official duties).

28. Def.s' Reply at 15–16.

29. The Court raised the potential issue of claim splitting *sua sponte* by letter dated May 20, 2011. Both parties have submitted supplemental legal memoranda regarding this issue in response to the Court's request.

30. Pl.'s Feb. 21, 2011 Letter at 1.

31. *Id.*

32. *Id.*

33. Pl.'s Ans. Br. at 11.

whether the State and its agencies have waived sovereign immunity;[34] (3) the individual Defendants are not entitled to statutory immunity because their actions were either ministerial in nature or constituted gross negligence, reckless conduct, willful or wanton conduct, and perhaps even fraud in the performance of discretionary acts;[35] (4) the public duty doctrine does not bar her claims because of the ministerial nature of the alleged acts (or failures to act) that give rise to the claims;[36] (5) she has established sufficient facts to establish that her injuries were caused by a "state created danger" and, if proven, this circumstance would justify the imposition of a duty upon the Defendants to act for her protection;[37] and (6) the doctrine of claim splitting does not apply here because Plaintiff has not named the same defendants in this action as she named in the District Court action.

## IV.

■■ The first question in dispute is whether the Court should convert the motion to dismiss to a motion for summary judgment. "Either the pleader or the moving party or both may bring the conversion provision into operation by submitting matter that is outside the challenged pleading, as courts in every circuit have recognized."[38] Defendants' motion references not only the District Court's decision[39] and the District Court complaint, but also the affidavit of Delaware's Insurance Coverage Administrator, Deborah Lawhead, in support of their argument that a sovereign immunity defense has not been waived by the General Assembly. For her part, Plaintiff provided exhibits bearing upon the Court's determination of whether the acts of the individual defendants were discretionary or ministerial—a key question relating to the determination of the qualified immunity issues before the Court.[40] Given the breadth of the extraneous matters that have been submitted by both parties, the Court is satisfied, pursuant to Del.Super. Ct. Civ. R. 12(b) and 56, that a conversion of the motion to dismiss into a motion for summary judgment is necessary in order for the Court fully to appreciate the facts and circumstances of this difficult case and to render a thoughtful decision.[41] Defendants motion to strike, therefore, is **DENIED**.

In deciding a motion for summary judgment, the Court must determine whether genuine issues of material fact remain for trial.[42] Summary judgment will be granted only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[43] If the

34. *Id.* at 12.

35. *Id.* at 14.

36. *Id.* at 19.

37. *Id.* at 23.

38. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed.2011).

39. *J.L. v. Murphy*, 2010 WL 2635544 (D.Del. June 28, 2010).

40. *See infra.*

41. *See* Del.Super. Ct. Civ. R. 12(b) & 56(b); *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del.2006) ("When the trial court considers matters outside of the complaint, a motion to dismiss is usually converted into a motion for summary judgment and the parties are permitted to expand the record."); *Mell v. New Castle County*, 835 A.2d 141, 144 (Del.Super.2003) ("If the extraneous matters have been offered to establish their truth, the court must convert the motion to dismiss to a motion for summary judgment.").

42. *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del.Super.1973).

43. *Id.*

record reveals that material facts are in dispute, however, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record *sub judice,* then summary judgment must be denied.[44]

The moving party bears the initial burden of demonstrating that the undisputed facts support his claim for dispositive relief.[45] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that material issues of fact remain for resolution by the ultimate fact-finder and/or that the movant's legal arguments are unfounded.[46] In this regard, "Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case."[47]

# V.

The parties' submissions implicate the following issues which the Court will address *seriatim:* (A) whether Plaintiff's claims are barred by *res judicata;* (B) if not, whether Defendants have viable defenses under the principle of sovereign immunity; (C) whether the individual defendants are protected by qualified immunity; (D) whether Plaintiff has stated a claim that survives the preclusive effects of the public duty doctrine (by virtue of the "state created danger" doctrine or otherwise); and (E) whether this action may proceed simultaneously with the pending District Court action. As will be discussed below, the Court has determined that Plaintiff's claims in this court as currently postured are barred by the doctrine of claim splitting. While this ruling could well begin and end the Court's inquiry, for the sake of clarity and completeness, the Court will address the other issues raised by the parties so that the Court's ruling may be placed in its proper context.

## A. The Doctrine Of *Res Judicata*

 The doctrine of *res judicata* precludes efforts to litigate the same cause of action more than once.[48] Defendants argue that the District Court's dismissal of Plaintiff's claims against DYRS and its agents precludes Plaintiff's renewal of the same claims or issues before this Court. A subsequent action is barred by *res judicata* where:

> (1) the court making the prior adjudication had jurisdiction; (2) the parties in the present action are either the same parties or in privity with the parties from the prior adjudication; (3) the cause of action is the same in both cases or the issues decided in the prior action are the same as those raised in the present case; (4) the issues in the prior action must be decided adversely to the plaintiff's contentions in the instant case; and (5) the prior adjudication was final.[49]

 Defendants' *res judicata* argument is flawed in two respects. First, the court making the prior adjudication must have had jurisdiction. The District Court determined that the Eleventh Amendment of the United States Constitution barred the exercise of supplemental jurisdiction over the State law claims against the DYRS defendants (raised in Counts VI and VII of the Complaint).[50] Thus, the

---

**44.** *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del.1962).

**45.** *Moore v. Sizemore,* 405 A.2d 679, 680 (Del. 1979) (citing *Ebersole,* 180 A.2d at 470).

**46.** *See Brzoska v. Olson,* 668 A.2d 1355, 1364 (Del.1995).

**47.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**48.** *Ezzes v. Ackerman,* 234 A.2d 444 (Del. 1967).

**49.** *Bailey v. City of Wilmington,* 766 A.2d 477, 481 (Del.2001).

**50.** *J.L.,* 2010 WL 2635544, at *5 (citation omitted) (" 'Since Eleventh Amendment Immunity bars the federal courts from adjudicating claims when [ ] the state is the real party

claims against DYRS that are now before this Court were dismissed by the District Court for lack of jurisdiction.[51] Second, the District Court dismissed the DYRS defendants without prejudice. A dismissal without prejudice, while final, does not operate as *res judicata* with respect to a subsequent law suit on the same cause of action.[52] Thus, Plaintiff's claims are not barred by *res judicata.*

## B. The Doctrine Of Sovereign Immunity

■■■ A fundamental premise of our systems of law and government is that the State, its agencies and its employees, acting in their official capacities, are immune from civil liability.[53] "[T]he doctrine of sovereign immunity provides that the State may not be sued without its consent." [54] Such immunity may only be limited or waived by "act of [the] General Assembly." [55] In order to overcome the State's sovereign immunity: (1) the State must waive immunity; and (2) the STCA must not otherwise bar the action.[56]

■■■ There are two means by which the State, through the General Assembly, may waive immunity: (1) by procuring insurance coverage under 18 *Del. C.* § 6511 for claims cited in the complaint; [57] or (2) by statute which expressly waives immunity.[58] The affidavit of Deborah Lawhead, director of the State of Delaware Insurance Coverage Office, adequately demonstrates that the State has not procured insurance coverage for the risks implicated by Plaintiff's claims.[59] Ms. Lawhead avers that she reviewed Plaintiff's complaint and that "[t]he State of Delaware, and its agencies [ ] thereof, has not purchased any insurance ... that would be applicable to the circumstances and events alleged in the Complaint...." [60] Moreover, Ms. Lawhead confirms that the "[G]eneral Assembly [has not] enacted any legislation pertaining to or allowing any possible liability of the State resulting from the facts as alleged in said Complaint." [61]

in interest, this Court may not exercise supplemental jurisdiction over the state claims.' Therefore the court will also dismiss J.L.'s state law claims against the DYRS Defendants.").

51. *Chappell v. Karpinski,* 305 A.2d 335, 337 (Del.Super.1973) ("There having been no judgment on the merits in the federal court ... judgment in that court is not *res judicata* as to plaintiff's cause of action in this Court.").

52. *Elfenbein v. Gulf & Western Indus., Inc.,* 590 F.2d 445, 449 (2d Cir.1978) (holding that the phrase "without prejudice" means that "[t]he action is terminated; however, a subsequent suit will not be barred by the doctrine of *res judicata.*"); *Braddock v. Zimmerman,* 906 A.2d 776, 784 (Del.2006) ("'[T]he phrase 'without prejudice' will mean only that the otherwise final judgment does not operate as a *res judicata* bar to preclude a subsequent lawsuit on the same cause of action.").

53. U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.").

54. *Doe v. Cates,* 499 A.2d 1175, 1176 (Del. 1985).

55. *Id. See* Del. Const. art. I, § 9 ("Suits may be brought against the State, according to such regulations as shall be made by law.").

56. *Doe,* 499 A.2d at 1176–77.

57. *Id.* at 1180.

58. *Id.* at 1176; *Janowski v. Div. of State Police Dep't of Safety & Homeland Security,* 2009 WL 537051 (Del.Super. Feb. 27, 2009).

59. Def.s' Mot. at Ex. C.

60. *Id.*

61. *Id.*

Ms. Lawhead's affidavit establishes that the State has not waived immunity with respect to Plaintiff's claims against DYRS and DPBHS by procuring insurance to cover these claims.[62] She also confirms that no statute waives immunity in this instance—a proposition that Plaintiff has not contested. Accordingly, the claims against DYRS and DPBHS must be dismissed on the basis of sovereign immunity. Whether the individual defendants are likewise immune from suit requires more in-depth analysis.

## C. Qualified Immunity

■■■■ When State actors or employees are sued in their individual capacities, they are exempt from liability (known as "qualified immunity") pursuant to the STCA when: (1) the alleged act or failure to act arises out of and in connection with the performance of official duties involving the exercise of discretion; (2) the act or failure to act was done (or not done) in good faith; and (3) the act or failure to act was done without gross negligence.[63] A plaintiff need only prove the absence of one of these elements to defeat qualified immunity.[64]

■■■■ As stated, if the Court determines that the individual defendant(s') alleged negligent conduct involved discretionary acts, Plaintiff's claims against such defendant(s) are barred by qualified immunity unless she can prove that the defendant(s) acted in bad faith or with gross negligence. The Court will deem conduct to be discretionary when "there is no hard and fast rule as to [the] course of conduct that one must or must not take."[65] "The discretionary act goes to the essence of governing."[66] Ministerial actions or failures to act, on the other hand, "involve less in the way of personal decision or judgment,"[67] are more routine, and typically involve conduct directed by mandatory rules or policies.[68]

■■■ Most of Plaintiff's allegations against the individual defendants arise from "in-the-field decisions" they made or allegedly should have made concerning the care and custody of T.H. while in the fluid environment of custodial supervision—actions that are necessarily discretionary.[69] As to these allegations, the individual defendants would enjoy qualified immunity unless they engaged in willful, reckless or grossly negligent behavior. In contrast to these allegations, however, are Plaintiff's allegations that, in "direct contravention of ... DYRS and DPBHS policies and procedures,"[70] the individual defendants failed to conduct reasonable investigations or mental health evaluations related to T.H.'s violent behavior in the days leading up to

62. See Caraballo v. Delaware Dep't of Corr. 2001 WL 312453, *1 (Del.Super. Mar. 22, 2001) ("The Courts have consistently relied on such affidavits in determining that the State has not waived sovereign immunity ... because there is not insurance coverage for the risks presented.").

63. 10 Del. C. § 4001.

64. Id. ("[T]he plaintiff shall have the burden of proving the absence of 1 or more of the elements of immunity as set forth in this section.").

65. Estate of Martin v. State, 2001 WL 112100, *5 (Del.Super. Jan. 17, 2001) (quoting Scar-

borough v. Alexis duPont High Sch., 1986 WL 10507, *2 (Del.Super. Sept. 17, 1986)).

66. Scarborough, 1986 WL 10507, at *2 (inside quotation marks omitted) (citation omitted).

67. Sussex County v. Morris, 610 A.2d 1354, 1359 (Del.1992).

68. Knoll v. Wright, 544 A.2d 265 (Del. Jun. 29, 1988), 1988 WL 71446 (TABLE).

69. Compl. 34, 38, 58(a), 58(h).

70. Id. at 36–37.

T.H.'s attack upon Plaintiff. If Plaintiff can show that DYRS and DPBHS maintained mandatory policies or procedures that the individual defendants ignored or otherwise failed to follow, then such failures would be ministerial and would not trigger immunity.[71] The record as it exists at this stage, however, does not allow the Court to determine whether Plaintiff's allegations can be supported by corresponding policies. Some discovery is needed to flesh out this issue.

▓▓▓ The Court is keenly aware of the importance of qualified immunity and the protections afforded by it. As Defendants have persuasively argued, qualified immunity is not just a defense to liability, it is also an entitlement to avoid the burdens of litigation.[72] The Court is likewise mindful that questions of qualified immunity must be resolved at the earliest possible stage of litigation.[73] These important policy considerations have been aptly stated by the Third Circuit:

> The Supreme Court's decisions in this area make it clear that an immune official's right to avoid trial is based not on the individual's desire to avoid the personal costs and aggravations of presenting a defense. Rather, the right not to stand trial is based on far broader concerns for avoiding the social costs of the

underlying litigation, and for ensuring and preserving the effectiveness of government. The concern is that, absent immunity from suit as well as liability, the attention of public officials will be diverted from important public issues. Additionally, qualified individuals might avoid public service altogether, while the threat of litigation may undermine the willingness of those who do serve to act when action is necessary.[74]

While these policy concerns are compelling, the Court must balance them against the Plaintiff's right to proper and thoughtful treatment of her claims. Whether the individual defendants failed to perform ministerial duties is a question of material fact that remains in dispute. If Plaintiff could show that the individual defendants may have failed to perform ministerial duties, then the law would allow her to litigate those claims on the merits. If not for the improper claim splitting identified below, the Court would allow Plaintiff to conduct limited discovery on whether mandatory policies and procedures were in place that governed the individual defendant's treatment and supervision of T.H. and, if so, whether the individual defendants adhered to those mandatory policies and procedures.[75]

---

71. *Abbott v. Gordon*, 2008 WL 821522, *17 (Del.Super. Mar. 27, 2008) ("Where duties are ministerial or mandatory, rather than discretionary, legislative immunity is inapplicable."); *Baker ex rel. Baker v. Oliver Machinery Co.*, 1981 WL 376973, *3 (Del.Super. Mar. 30, 1981) (Teachers failure to properly supervise a student during the student's use of a machine was not protected by sovereign immunity because the failure was ministerial in nature.); *O'Connell v. LeBloch*, 2000 WL 703712, *6 (Del.Super. Apr. 19, 2000) ("When a policy is implemented by a school, the school is required to follow that policy, making its actions with regard to that policy ministerial and not discretionary in nature.").

72. *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir.2002); Def.s' Mot. at 17.

73. *Miller v. Clinton County*, 544 F.3d 542, 547 (3d Cir.2008).

74. *In Re Montgomery County*, 215 F.3d 367, 374–5 (3d Cir.2000) (citation omitted); Def.s' Mot. at 16–17.

75. *Crawford–El v. Britton*, 523 U.S. 574, 593 n. 14, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ("[W]e have since recognized that limited discovery may sometimes be necessary before the [ ] court can resolve a motion for summary judgment based on qualified immunity.").

■■■■■ Whether *vel non* the individual defendants acted in bad faith or with gross negligence are also inherently factual questions.[76] Given the lack of discovery to date, those questions, would not be subject to summary disposition.[77]

### D. The "Public Duty" And "State Created Danger" Doctrines

#### 1. The Public Duty Doctrine

■■■■■ The Defendants have invoked the public duty doctrine as another basis upon which they urge the Court to dismiss Plaintiff's claims. The public duty doctrine provides that when a public entity or employee owes a duty to the public at large rather than a specific individual, no member of the public may pursue a claim against that entity or employee unless the claims are based upon non discretionary acts or failures to act.[78] Thus, much like the doctrine of qualified immunity, for the public duty doctrine to apply, the plaintiff's claims must be based upon the exercise of discretion on the part of the actor in his or her official capacity.[79]

■■■■■ The Court already has determined that certain of Plaintiff's allegations of negligence and/or gross negligence appear to arise from alleged ministerial acts of the individual defendants while acting in their official capacity.[80] To the extent Plaintiff can support these allegations with competent evidence, the public duty doctrine would not bar these claims.[81] The claims relating to discretionary actions or failures to act by the individual defendants, however, cannot survive the public duty doctrine unless Plaintiff can establish that: (1) Defendants assumed an affirmative duty to act on behalf of Plaintiff; (2) Defendants had knowledge that inaction would lead to harm; (3) Defendants had direct contact with Plaintiff; and (4) Plaintiff justifiably relied on Defendants' undertaking.[82]

■■■■■ Plaintiff argues that the individual defendants assumed a duty to Plain-

---

**76.** *Town of Port Deposit v. Petetit*, 113 Md. App. 401, 688 A.2d 54, 61 (1997) ("To the extent that qualified immunity depends on resolution of disputed facts, some disputes such as the existence of gross negligence or malice may be for [a] trier of fact to resolve....").

**77.** The Court rejects Defendants' contention that the Complaint does not adequately plead gross negligence or reckless/wanton conduct. In order for a plaintiff to plead gross negligence with the requisite particularity, the plaintiff must articulate "facts that suggest a *wide* disparity between the process [] used ... and that which would have been rational." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 750 n. 429 (Del.Ch.2005) (quoting *Guttman v. Huang*, 823 A.2d 492, 507 n. 39 (Del.Ch.2003) (emphasis in original)). The Complaint devotes three pages to allegations that the individual defendants were grossly negligent in their failures to provide mental and behavioral health services to T.H., their reckless disregard for the safety of the personnel, coaches, trainers and students at Dickinson High school, and repeated failures to enforce policies, rules and regulations to control

T.H., who had a known history of unpredictable and violent behavior. *See* Compl. 64–69. The Complaint details in nearly ten pages the facts giving rise to the individual defendants' knowledge of T.H.'s violent criminal history (one which would be alarming for an adult, let alone a young man of just sixteen years). *See* Compl. 16–48. The Court is satisfied that the Complaint sufficiently states a claim that such failures constituted gross negligence.

**78.** *See Johnson v. Indian River Sch. Dist.*, 723 A.2d 1200, 1203 (Del.Super.1998); 57 Am. Jur.2d *Municipal, etc., Tort Liability* §§ 88, 90 (2011).

**79.** *See Higgins v. Walls*, 901 A.2d 122, 143 (Del.Super.2005); 18 McQuillin Mun. Corp. § 53.04.25 (3d ed.2011).

**80.** *See supra* n. 71.

**81.** *Id.* Here again, the Court would permit this limited discovery to proceed if not for the improper claim splitting.

**82.** *Johnson*, 723 A.2d at 1203.

tiff by releasing T.H. to the care of his mother on September 23, 2008.[83] This allegation misses the mark set by the public duty doctrine because the release of T.H. to his mother does not amount to Defendants' assumption of an affirmative duty to act on behalf of Plaintiff.[84] Thus, the public duty doctrine would preclude Plaintiff's claims as they relate to discretionary actions or failures to act by the individual defendants.[85]

### 2. The State Created Danger Doctrine

■ Defendants' motion prophylactically addressed the state created danger doctrine in apparent anticipation that the Plaintiff may invoke it as a means to defeat Defendant's public duty argument. The state created danger doctrine "places an affirmative duty under the due process clause on an official to protect and care for an individual when the official has placed the individual in a dangerous position that he would not have otherwise faced." [86] Not surprisingly, Plaintiff accepted the invitation to argue that the State defendants created a danger by allowing T.H. to interact with the Dickinson High School athletic staff without adequate supervision.[87]

To determine if the state created danger doctrine will impose a duty upon a defendant running to the plaintiff, the Court must evaluate, *inter alia,* the nature of the relationship that existed between the plaintiff and defendant at the time the "danger" allegedly was "created." [88] In this case, Plaintiff did not even raise the state created danger doctrine in her complaint. And neither party addressed key elements of the doctrine in their briefing, including, in particular, the "relationship" element. Given that the parties have not fully developed this issue, the Court is not inclined to address it further here, especially since the Court has determined that the case must be stayed because Plaintiff has improperly split her claims.

### E. Claim Splitting

■ While *"res judicata* precludes the re-litigation of factual and legal issues previously decided in an earlier lawsuit, [ ] the rule against claim splitting eliminates the contemporaneous litigation of the same factual or legal issues in different courts." [89] As previously noted, a federal action is pending against the School District Defendants, Diamond State Youth and New Behavioral Network,[90] begging

83. Pl.'s Ans. Br. at 21.

84. 57 Am.Jur.2d *Municipal, etc., Tort Liability* § 86 (2011) (the plaintiff must show "some form of direct contact between the government and the plaintiff … The doctrine applies where the plaintiff can show that he has a special, direct and distinctive interest in an official's performance of a duty.").

85. Compl. 58(a)-(g) & 65(a)-(h).

86. *Wyatt v. Krzysiak,* 82 F.Supp.2d 250, 255 (D.Del.1999). *See also* 15 Am.Jur.2d *Civil Rights* § 71 (2011) (liability for a violation of due process can be established where the State "affirmatively puts a person in a position of danger that he or she would not have been but for the state's action, and injury results."); *Bright v. Westmoreland County,* 443 F.3d 276 (3d Cir.2006) (holding that the mere failure of state law enforcement officials to protect an individual against private vio-

lence does not implicate the state created danger doctrine); *Costobile–Fulginiti v. City of Philadelphia,* 719 F.Supp.2d 521 (E.D.Pa. 2010) (holding that liability under the state created danger doctrine requires an affirmative state action, not a mere failure to protect an individual against private violence).

87. Pl.'s Ans. Br. at 24.

88. 14 C.J.S. *Civil Rights* § 51 (2011) ("A constitutional duty can arise when the person involved in causing the deprivation has created a special or custodial relationship, or is aware of a special danger with respect to a particular victim.").

89. *Balin v. Amerimar Realty Co.,* 1995 WL 170421, *4 (Del.Ch. Apr. 10, 1995).

90. *See supra* n. 22.

the question of whether that action and this action, which both arise from the same series of events and seek the same relief for the same indivisible injury, may be heard simultaneously.

The claim splitting doctrine presumes that the interest of fairness will require a plaintiff to present all of his theories relating to one transaction in a single action.[91] As this court has held:

[W]here a plaintiff has had a full, free and untrammeled opportunity to present his facts, but has neglected to present some of them or has failed to assert claims which should in fairness have been asserted, he will ordinarily be precluded by the doctrine of [claim splitting] from subsequently pressing his omitted claim in a subsequent action.[92]

Two basic principles animate the rule. First, "[t]he rule is founded upon the principle that no person should be unnecessarily harassed with a multiplicity of suits."[93] Second, the rule is "designed to prevent a litigant from getting 'two bites at the apple.'"[94] As discussed below, both principles are in play here.

Plaintiff appears to dispute whether the first principle—that Defendants would be subjected to a multiplicity of suits—is implicated by her simultaneous prosecution of this action and the District Court action. She notes, in particular, that she has named different defendants in both actions and, on this basis, argues that claim splitting cannot apply. To support this proposition, Plaintiff cites to *Winner Acceptance Corp. v. Return on Capital Corp.*, in which the court determined that separate causes of actions could proceed without a claim splitting violation because, *inter alia*, the separate actions involved separate defendants.[95] Significantly, however, the ruling in *Winner* turned on the fact that the claims involved in the separate actions did not "substantially overlap."[96] This can hardly be said of the claims presented in this and the District Court litigations. A comparison of these claims reveals that they are virtually identical.[97]

Nor can Plaintiff credibly argue that the Defendants *sub judice* will not be subjected to duplicitous litigation or multiple judgments. While it is true that she has not named many of the defendants she has named here in the District Court action, it is not realistic to assume that such defendants will not eventually be hauled

91. *Maldonado v. Flynn*, 417 A.2d 378, 382 (Del.Ch.1980).

92. *Mells v. Billops*, 482 A.2d 759, 761 (Del.Super.1984) (inside quotation marks omitted) (citation omitted).

93. Joseph E. Edwards, LL.B, Annotation, *Waiver of, by failing to promptly raise, objection to splitting cause of action*, 40 A.L.R.3d 108 (1971).

94. *Balin*, 1995 WL 170421, at *4. This case is distinguishable from *Balin*, where the Court held that there was no claim splitting because the parties *and the claims* were different and the damages arose from wholly distinct causes of action. Plaintiff's separate claims for damages, unlike in *Balin*, arise from a single, indivisible injury.

95. 2008 WL 5352063 (Del.Ch. Dec. 23, 2008).

96. *Id.* at *18.

97. 50 C.J.S. *Judgments* § 1000 (2011) ("[A] party will be permitted to split claims, and yet avoid claim preclusion, if the two claims involve different sets of transactional facts."). As stated, the "transactional facts" identified in the two Complaints (that is, the District Court Complaint and the Complaint *sub judice*) are literally identical with the exception of the defendants referenced in the allegations. *Compare* Compl. 16–48, *and* D. Del. Compl. 10–46. Likewise, the relief sought in both complaints (compensatory and punitive damages for physical and emotional injuries resulting from the assault and rape) is identical. *Compare* Compl. 59–62, 66–69 *and* D. Del. Compl. 53, 61, 83–86.

into the District Court action so that a complete and proper allocation of fault can occur. Our Supreme Court has held that an allocation of fault among joint tortfeasors cannot occur in the absence of a proper pleading—either cross claim or third party complaint—that makes the claim for contribution.[98] The Uniform Contribution Among Tort–Feasor Law, at 10 *Del. C.* § 6306, also makes clear that a defendant who seeks an apportionment of fault against potential tortfeasors not parties to the action must raise the claim for contribution in the pending action or lose it.[99] The fact is that the two pending actions are so intertwined that all defendants, in both actions, no matter in which action they were named by Plaintiff, would likely be subjected to duplicitous litigation and potential liability if both actions were permitted to proceed.[100]

 The second consideration at the heart of the claim splitting doctrine—preventing unwarranted double recovery[101]—is even more clearly at work here than the first. Plaintiff seeks two awards of compensatory and/or exemplary damages relating to a single transaction and a single injury in two different fora.[102] "Damages resulting from a single tortious act generally must be assessed in one proceeding, and cannot be made the subject of separate suits." [103] "In the case of a personal injury caused by a single tortious act, separate actions for different elements of damages are not maintainable." [104] Stated differently, where the accident that gives rise to the litigation inflicts "a single set of injuries for which [one] sustained a single, indivisible set of damages .... allowing [a] plaintiff's action to go forward [in separate courts] would require [the court] to hold that [a] plaintiff is entitled to recover different amounts of damages" for one injury.[105] Instead of allowing such a result:

> The present trend is to see [a] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to

**98.** *See Ikeda v. Molock,* 603 A.2d 785, 786 (Del.1991).

**99.** *See* 10 *Del. C.* § 6306(b) ("If relief can be obtained as provided in the subsection [third-party practice] no independent action shall be maintained to enforce the claim for contribution.").

**100.** Count I of the District Court Complaint alleges against all of the defendants a violation of Plaintiff's substantive Due Process pursuant to 42 U.S.C. § 1983 under the state created danger doctrine. Count II of the District Court Complaint alleges a violation of Plaintiff's Substantive Due Process pursuant to 42 U.S.C. § 1983. Count III seeks a determination that the School District Defendants violated Title IX of 20 U.S.C. § 1681. Count IV alleges negligence against the School District Defendants and Count V alleges gross negligence against the School District Defendants. In each of her federal claims, Plaintiff seeks relief for physical and emotional injuries, future medical expenses and loss of earning capacity—the exact same remedies she seeks in this Court.

**101.** *Balin,* 1995 WL 170421, at *4.

**102.** *See supra* n. 98.

**103.** 1 AM.JUR.2D *Actions* § 114 (2005).

**104.** *Id.*

**105.** *Saichek v. Lupa,* 204 Ill.2d 127, 272 Ill. Dec. 641, 787 N.E.2d 827, 834–35 (2003) (noting that there "is no way, legally or logically," that the court could permit such a result). *See also* PROSSER & KEETON ON TORTS, HORNBOOK SERIES § 52 (5th ed. 1984) ("When both defendants fail to perform their obligation, and harm results, each will be liable for the event; and here likewise there is no reasonable basis for any division of damages.... Certain results, by their very nature, are obviously incapable of any reasonable or practical division.").

the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.[106]

Plaintiff's effort to prosecute the identical action against different defendants in different courts simply cannot be squared with the bar against claim splitting. In the absence of a recognized exception to the doctrine, therefore, her claims here cannot be permitted to go forward.

■ As with many rules in the law, there are exceptions to the claim splitting rule. For instance, the doctrine does not apply when the affected defendants waive their objection to claim splitting.[107] Clearly, there has been no waiver here. Nor will the rule apply "[w]here it appears that a plaintiff could not for jurisdictional reasons have presented his claim in its entirety in a prior or parallel adjudication...."[108] In this case, the District Court held that Plaintiff's state law claims against the DYRS defendants were barred by the Eleventh Amendment and the doctrine of sovereign immunity.[109] In so holding, the District Court observed that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Elev-

enth Amendment ... when [ ] the state is the real party in interest."[110] While this holding, at first glance, may appear to implicate the "jurisdictional" exception to the claim splitting doctrine, the analysis does not end here.

Like the District Court, this Court has now held that certain of Plaintiff's claims are barred by sovereign immunity. Implicit in the fact that both the District Court and this Court have invoked sovereign immunity to bar the DYRS (and DPBHS) claims is a recognition that the doctrine applies wherever Plaintiff may choose to bring these claims. Thus, it cannot be said that Plaintiff has come to this forum as a last resort to pursue claims that are only viable in state court. Indeed, all of the potentially viable claims that Plaintiff has brought here could have been brought in the District Court. Consequently, the "jurisdictional" exception to the claim splitting doctrine does not apply.[111]

■ Having concluded that Plaintiff has impermissibly split her claims, and that no exception to the claim splitting doctrine applies, the Court must next determine the most appropriate means by which to address the problem. The Court could stay this action in favor of the District Court action or it could dismiss the

---

106. Restatement (Second) of Judgments § 24 (1982).

107. See 47 Am.Jur.2d Judgments § 476 (May 2011).

108. See Maldonado, 417 A.2d at 383–84 ("Although [Plaintiff's] common law theory of recovery would not ordinarily have been cognizable in the U.S. District Court, because of lack of subject matter jurisdiction of the federal court, the District Court could have exercised discretionary jurisdiction over the claim if there had been a transactionally-related federal claim to which the state claim was pendent.... [Plaintiff] has not shown that he could not have presented his entire claim in

the U.S. District Court or that, had he presented his entire claim, the District Court would have refused to entertain pendent jurisdiction over the state law claims in the federal action, [sic] Maldonado has therefore failed to show that a sufficient barrier existed in the federal action to prevent the assertion of his entire claim.").

109. J.L., 2010 WL 2635544, at *5.

110. Id. (quoting Reiff v. Phila. County Court of Common Pleas, 827 F.Supp. 319, 325 (E.D.Pa. 1993)).

111. See Maldonado, 417 A.2d at 383–84

action with or without prejudice.[112] In *Adams*, the court's election to dismiss the later-filed action with prejudice did not compromise the plaintiff's prosecution of the other action because the parties in both actions were nearly identical.[113] The same was true in *Ameritox, Ltd.*[114] This case presents a more complicated posture, however, because the parties in the two actions are not aligned. While this fact does not bear upon the applicability of the claim splitting doctrine in this instance, it does have the potential to affect Plaintiff's ability to bring her claims against all potential tortfeasors in a single action. A dismissal with prejudice of Plaintiff's claims in this Court may have *res judicata* implications for the Plaintiff in the District Court if she tried to name the dismissed defendants in that action. There may be statute of limitations consequences too. Neither of these consequences are consistent with the purposes of the claim splitting doctrine which are to prevent exposure to duplicitous litigation and/or double recoveries.

The parties have not cited the Court to any authority that speaks to the most appropriate means by which to address a claim splitting problem under circumstances similar to those present here. The Court, likewise, has found no helpful authority. In the absence of guidance, the Court must follow its instincts.[115] Plaintiff has brought her claims in this Court within the applicable statute of limitations. As noted herein, if she had not improperly split her claims, she would have overcome (for the most part) the individual defendants' motion to dismiss. And yet, Defendants have correctly argued that Plaintiff may not maintain these claims while she prosecutes identical claims against different defendants in the District Court. To avoid this result, the Court will stay this action in favor of the District Court action. If the District Court action is dismissed, either voluntarily or otherwise, then the Court will consider an application to lift the stay. But the Court will not countenance Plaintiff "taking two bites at the apple."[116] If she loses in the District Court on the merits, or if there are any other bases to apply issue or claim preclusion doctrines to Plaintiff's claims in this Court based upon events in the District Court, the Court will not hesitate to enforce the doctrines (including dismissal of the action with prejudice if appropriate).

## VI.

Plaintiff's claims against DYRS and DPBHS are barred by sovereign immunity. Accordingly, the motion to dismiss these claims is **GRANTED**. Her claims against all Defendants are barred by the doctrine of claim splitting. Nevertheless, in order to preserve her ability to pursue all available claims in a single action, the Court will stay this action in favor of the District Court action. The motion to dis-

112. *See Adams v. Cal. Dept. Of Health Serv.*, 487 F.3d 684, 692 (9th Cir.2007) ("Although the district court alternatively could have opted to dismiss Adam's later-filed complaint without prejudice, to consolidate the two actions [not available here] or to stay or enjoin proceedings, under the circumstances of this case, the district court did not abuse its discretion in electing to dismiss the second action with prejudice."); *Ameritox, Ltd. v. Aegis Sciences Corp.*, 2009 WL 305874, at *4 n. 4 (N.D.Tex. Feb. 9, 2009) ("Under the rule against claim-splitting, a claim may be dismissed if it arises out of the *same wrong* (or transaction) as the first-filed claim.").

113. *Adams*, 487 F.3d at 692.

114. *Ameritox, Ltd.*, 2009 WL 305874, at *3.

115. *See Adams*, 487 F.3d at 692 (noting that trial court must be afforded "an ample degree of discretion" in fashioning a remedy for improper claim splitting).

116. *See supra* n. 94.

miss as to these claims is **DENIED without prejudice.**

 **IT IS SO ORDERED.**