# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TRENT WICKS, Individually and as
Personal Representative of the ESTATE
OF OAKLY POTTS,

        Plaintiff,

        v.

DELAWARE VETERANS HOME, an
Agency of the State of Delaware,
DELAWARE DEPARTMENT OF
STATE, STATE OF DELAWARE,
TERRY HOLLINGER, SANDRA
GROFF, and ARCHIE POLING,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No.: N21C-11-177 FJJ

Submitted: August 22, 2023
Decided: August 24, 2023

## OPINION AND ORDER

### *On Defendants' Motion for Summary Judgment on Immunity*

### DENIED in part; GRANTED in part

*Kelley M. Huff, Esquire,* Shelsby & Leoni, Wilmington, Delaware, *Attorney for Plaintiff.*

*Caneel Radison-Blasucci, Deputy Attorney General*, Attorney General's Office, Wilmington, Delaware, *Attorney for Defendants.*

**Jones, J.**

Oakly Potts ("Potts") was admitted to the Delaware Veterans Hospital ("DVH") in 2007 for long term care following a stroke. He required physical assistance for eating and a mechanically soft chopped diet. Despite his dietary restrictions he would often acquire and eat foods that did not conform with his diet. On December 2, 2019 Potts purchased pretzels from the DVH gift shop. Shortly after returning to his room, Potts used his call button to alert staff of his need for assistance. Potts was found sitting up in bed choking on a pretzel. DVH employees began life saving measures and called the paramedics. Potts was transferred to a hospital, where he passed later in the evening.

Trent Wicks, the son of Potts, has sued the DVH, the Delaware Department of State, the State of Delaware, Sandra Groff in her capacity as the Chief of Operations at DVH, Archie Poling as the Director of Nursing and Interim Nursing Home Administrator and Terry Hollinger as the Nursing Home Administrator at DVA. The claims are for personal injuries and wrongful death based on allegations of medical/nursing home malpractice. Defendants have filed the instant motion for summary judgment on the basis of sovereign immunity and the State Tort Claims Act ("STCA"). For the reasons stated below Defendants motion is **GRANTED** as to the State Agencies and **DENIED** as to the individual defendants.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record "shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter

2

of law."[1]  The moving party bears the burden of establishing the nonexistence of material issues of fact.[2]  The burden then shifts to the nonmoving party to establish the existence of material issues of fact.[3]  In considering the motion, the Court must view the evidence in a light most favorable to the nonmoving party and accept the nonmovant's version of any disputed facts.[4]

## FACTS

When the facts are viewed in a light most favorable to the plaintiff as the non-moving party, the following is revealed:

Terry Hollinger was the DVH Administrator from April of 2019 to November 2, 2019.[5] Hollinger was a State of Delaware employee. He resigned his position with DVH.[6]

Archie Poling was the Interim DVH Administrator from November 3, 2019 to February 5, 2020.[7] Poling was initially the Director of Nursing at DVH, but he took over the Administrator position after Hollinger resigned. Poling relied on Hollinger to ensure policies and procedures were in place at DVH.[8]

---

[1] Del. Super. Ct. Civ. R. 56(c).
[2] *See Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[3] *See id.* at 681.
[4] *See Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted).
[5] Ex. A at 17:11-24; 20:10-13. All references to exhibits are to those exhibits attached to the plaintiffs' response to the Defendants' Motion for Summary Judgment
[6] *Id.* at 39:3-6, 18:1-17.
[7] Ex. B at 48:6-12.
[8] *Id.* at 43:10-45-1.

Groff was the Director of Operations at DH. She was a State of Delaware employee.[9] Groff reported directly to the Administrator.[10] As the Director of Operations, Groff was responsible for the oversite of the Gift Shop.

From 2011 until March 2020, DVH maintained a Gift Shop on the premises. Cindy Schnapp was the Volunteer Services Coordinator that oversaw the Gift Shop and she reported directly to Sandra Groff.[11]

The DVH Gift Shop was owned by a non-profit volunteer group, Delaware Volunteers for Veterans. It was run, however, by volunteers that Schnapp staffed and trained. Schnapp trained the volunteers to follow DVH policies, including the policy that residents could purchase anything they wanted in the Gift Shop.[12]

The DVH Gift Shop sold various food items, including hard pretzels, candy, and nuts.[13] Residents were permitted to visit the Gift shop freely and independently. There were no procedures in place to prevent residents from buying foods that violated their dietary plans. The DVH policy was known by the Individual Defendants, each of whom were responsible for the safe operation of the Gift Shop.[14]

DVH had dietary policies that governed the food and drinks served by DVH through its kitchen and at special events. These dietary policies restricted DVH from

---

[9] *Id.* at 15:11-14.
[10] *Id.* at 16:2-8.
[11] Ex. C at 29:14-30:24; 97:23-98:19; Schnapp Dep. at 14:4-10 (Ex. F).
[12] Ex. C at 54:8-11; Ex. F at 16:23-20:4; 21:3-23:1; 25:23-27:16; 53:23-54:11.
[13] Ex. B at 105:20-24, 113:5-16.
[14] Ex. A at 52: 7-53:16 (Hollinger); Ex. B at 56:5-57:16; 113:17-20; 115:6-15 (Poling); Ex. C at 97:23-99:1; 101:10-16 (Groff).

serving residents food and drinks that violated their dietary plans.[15] For special events, DVH Activities staff had a list of dietary restrictions to ensure that residents were offered items consistent with their special diets.[16] The Gift Shop volunteers were not given such a list, so they were unaware as to whether residents were making unsafe purchases.[17] DVH contemplated providing dietary information to the Gift Shop volunteers but it was never done.[18]

Potts was admitted to DVH for long-term care in 2007 following a stroke. As a result of his stroke, Potts had dysphagia (difficulty swallowing). DVH assessed Potts and devised a Care Plan to meet his needs.[19] Potts' Care Plan indicated that he needed supervision and assistance while eating.[20] DVH Recognized that Potts had difficulty chewing and swallowing his food and placed him on a mechanically soft/chopped diet.[21]

On December 2, 2019, Potts wheeled himself down to the Gift Shop and purchased two bags of hard pretzels. Potts returned to his room where a CNA, Pamela Johnson, assisted him into bed, put some of the hard pretzels out on his food tray, and then left the room allowing him to eat the pretzels unsupervised. Johnson

---

[15] Ex. B at 59:14-63:23; 104:24:105:24.
[16] Ex. F at 38:18-39:22.
[17] DVH Gift Shop volunteers were told how much money a resident had and whether the resident was an elopement risk. Ex. F at 27:17-28:8.
[18] Ex. F at 30:19-33:19.
[19] A nursing home must develop and implement a comprehensive person-centered Care Plan for each resident, consistent with the residentr ights, that includes measurable objectives and timeframes to meet a resident's medical, nursing, and mental and psychosocial needs. *See also* 42 CFR § 483.21(b).
[20] Care Plan, Ex. G
[21] Dietary Orders, Ex. H. A mechanical soft diet is a texture-modified diet that restricts foods that are difficult to chew or swallow.

was not trained to know that hard pretzels violated Potts' mechanically soft/chopped diet or that Potts' Care Plan required her to supervise him while he ate the pretzels.[22]

After Johnson left the room, Potts started choking on the hard pretzels. He rang his call bell for help. A nurse responded and started the Heimlich until paramedics arrived.[23] Potts was transported to Bayhealth where he died later that night of cardiopulmonary arrest secondary to choking/food aspiration.[24] He was 84 years old.

Plaintiff has identified two experts: Lance Youles, LNHA and John Kirby, M.D.[25] Lance Youles is a nursing homes administration expert. . Youles opines, in part, that:

- Potts was completely dependent on DVH management and staff to provide a safe living environment and protect him from choking.

- DVH had a duty to control the food and fluids. Potts' had access to, especially after receiving prior notice of his choking risk.

- Defendants were responsible for managing DVH and ensuring that it was operated in compliance with all Federal, State, and local laws, regulations, and codes, and with accepted professional standards and principles that apply to staff in a long-term care facility.

- Defendants were aware that residents were freely permitted to purchase items at the Gift Shop that were unsafe and violated their special diets. Despite this knowledge, Defendants did nothing. Vulnerable residents like Potts were at risk.

- The standard of care required that the DVH Gift Shop operate within the same policies and/or procedures as the dietary department (kitchen). Those standards ensure that each resident is only served food that complies with their diet orders, as determined by their attending physician. These DVH policies

---

[22] Johnson Dep. at 44:10-53:5 (Ex. J).
[23] *Id.* at 10:17-13:1.
[24] Death Certificate, Ex. K
[25] Pl. Expert Discolsures, Ex. L

must be applied equally in the kitchen and the Gift Shop, and not create a double standard that places residents at risk. Defendants were responsible for ensuring that these written DVH dietary policies were developed and implemented in the Gift Shop in order to keep residents safe by preventing them from acquiring food items that were inconsistent with their diet orders.

- Defendants failed to ensure that DVH provided sufficient nursing staff with the appropriate competencies to assure resident safety.

- Defendants' failures in their management of the DVH was an extreme departure from the nursing home standard of care and arises to willful, wanton, and reckless behavior.

Dr. Kirby is a geriatrician with experience working as an Attending and medical director in nursing homes. He opines, in part, that:

- Pretzels are not a mechanically soft food. Pretzels should not have been provided to him/allowed. Potts was demented and unable to make appropriate food choices.

- Failure to have a system in place to prevent Potts from purchasing and ingesting food that was not part of his mechanically soft/chopped solids diet deviated from generally accepted standards of medical care and violated federal OBRA regulations.

## ANALYSIS

A fundamental premise of our system of law and government is that the State, its agencies and its employees, acting in their official capacities, are immune from civil liability.  The doctrine of sovereign immunity provides that the State may not be sued without its consent.[26]  Such immunity may only be limited or waived by "act of the General Assembly.[27]  In order to overcome the State's sovereign immunity:

---

[26] Doe v. Coates, 499 A.2d 1175 (Del. 1985); *J.L. v. Barnes et. al.,* 33 A.3d 902, 913 (Del. Super. 2011).
[27] *See* Del. Const. Art. I, §9).

(1) the State must waive immunity; and (2) the State Torts Claims Act[28] must not otherwise bar the action.[29]

There are two means by which the State, through the General Assembly, may waive immunity: (1) by procuring insurance coverage under 18 *Del.C.* § 6511 for claims cited in the complaint;[30] or (2) by statute which expressly waives immunity.[31] Defendant has produced an affidavit of Debra Lawhead, who is the Insurance Coverage Administrator for the State of Delaware. Lawhead's affidavit adequately demonstrates that the State has not procured insurance coverage for the risks implicated by Plaintiff's claims. Lawhead avers that she reviewed Plaintiff's complaint and that "the State of Delaware, and its agencies thereof had not purchased any insurance … that would be applicable in the circumstances and events alleged in the Complaint.[32] Moreover, Lawhead confirms that the "General Assembly has not enacted any legislation pertaining to or allowing any possible liability of the state resulting from the facts as alleged in said complaint.[33]

Lawhead's affidavit establishes that the State has not waived immunity with respect to Plaintiff's claims against Delaware Veterans Home, Delaware Department of State and the State of Delaware by procuring insurance for these claims. She also confirms that no statute waives immunity in this instance. Plaintiffs do not oppose

---

[28] 10 *Del.C.* §4001.
[29] *Doe*, 488 A.2d at 1176-77; *J.L.*, 33 A.3d at 913.
[30] *Id.*
[31] *Id.*; *see also Janawski v. Div. of State Police Dept. of Safety & Homeland Security,* 2009 WL 537051, at *3 (Del. Super. Feb. 27, 2009).
[32] *See* Exhibit 6 in support of Dependents' Motion for Summary Judgment).
[33] *Id.*

entry of summary judgment as to the state agencies. Accordingly, the claims against the Delaware Veterans Home, Delaware Department of State and the State of Delaware must be dismissed on the basis of sovereign immunity.

The Plaintiffs have sued Terry Holinger, Sandra Groff and Archie Poling who are each state employees. They are sued in their individual capacities. When state actors or employees are sued in their individual capacities, they are exempt from liability (known as "qualified immunity" pursuant the STCA when: (1) the alleged act or failure to act arises out of and in connection with the performance of official duties involving the exercise of discretion; (2) the act or failure to act was done (or not done) in good faith; and (3) the act or failure to act was done without gross negligence.[34] A plaintiff need only prove the absence of one of these elements to defeat qualified immunity.[35]

Plaintiffs assert that the actions of the individual defendants were ministerial and not discretionary. Plaintiffs further maintains that the defendants' actions constituted gross or wanton negligence.

The determination of whether an act is discretionary or ministerial under the STCA is a question of law.[36] If the Court determines that the individual defendants' alleged negligent conduct involved discretionary acts, Plaintiffs' claims against such defendants are barred by qualified immunity unless plaintiffs can prove that the

---

[34] 10 *Del.C.* §4001.
[35] *Id.*; *J.L.*, 33 A.3d at 914.
[36] *Ward v. Gateway Charter School*, 2018 WL 3655864, at *3 (Del. Super. July 18, 2018)

defendants acted in bad faith or with gross negligence. The Court will deem conduct to be discretionary when there is no hard and fast rule as to the course of conduct that one must or must not take.[37] The discretionary act goes to the essence of governing.[38] Ministerial actions or failure to act, on the other hand, "involve less in the way of personal decision or judgment,[39] are more routine, and typically involve conduct directly by mandatory rules or policies."[40] Recently the Delaware Supreme Court had occasion to address the distinction between discretionary and ministerial acts. The Court wrote:

> As we have observed, the "distinction between discretionary and ministerial acts is always one of degree," but our case law helps to illustrate the distinction. In Sadler v. New Castle County, we held that a state rescuers' decision to carry the plaintiff across a river rather than up the riverbank after the plaintiff suffered a fall was discretionary. In Sussex County, a Sussex constable was transporting a mental patient in the back seat of constable's family car when the patient jumped out of the car and was seriously injured. This Court held that the constable's "selection and equipment of the car," which was "indisputably ill-equipped for the transportation of mentally ill passengers," was effectively a ministerial act because it had "little bearing of importance upon the validity of his official conduct," i.e., transporting the passenger. In Hughes ex rel. Hughes v. Christiana School District, this Court held that a teacher's decision to allow a sick student to go to the nurse unescorted was a discretionary decision, noting that "no facts support" that the teacher should have necessarily engaged in another particular course of action. Rather, the Hughes teacher had a number of apparently reasonable options and chose among them. As these cases show, a duty is discretionary if and

---

[37] *Id.*; *see also Estate of Martin v. State*, 2001 WL 112100 (Del. Super. Jan. 17, 2001).
[38] *Id.*
[39] *Id.*
[40] *Id.*; *see also Scarborough v. A.I. Dupont High School*, 1986 WL 10507 (Del. Super. Sept. 17, 1986).

only if the state actor faced a range of reasonable choices while performing those duties.[41]

In support of its argument that the defendants' action were ministerial rather than discretionary plaintiff cites the Court to a host of federal regulations.[42] According to the plaintiff these regulations, which had been adopted by the state, compel a conclusion that the defendants actions were ministerial and not discretionary. This Court disagrees.

There can be no question that the defendants had a duty to maintain a safe environment for the patients of DVH. It is undisputed that each resident of the DVH must receive necessary care consistent with their plan of care; must not be neglected; and the appropriate services must be provided to them. The overarching theme of the regulations cited by the plaintiff is that a resident of the DVH must receive safe and adequate care. However, none of the regulations cited by the plaintiff specifically address the situation at hand. Moreover, how the staff goes about its function to provide a safe dietary environment involves discretion. The policy of how the gift shop should operate and what can be sold to whom is quintessentially discretionary. I therefore find that the actions (or inactions) of the individual defendants were discretionary.

---

[41] *Greenfield as Next Friend for Ford v. Miles, et al.,* 211 A.3d 1087, 1099 (Del. 2019).
[42] Generally, plaintiffs cite the Court to various sections of 42 CFR IV Part 483, Subpart B which are the federal regulations regarding the standard of care required of nursing homes. Delaware has adopted and incorporates these regulations for its facilities in Delaware 16 Del Admin. C. Section 3201, Section 1 and 2).

The DTCA also permits a plaintiff to recover against a public employer tortfeasor even where the actions were discretionary if the plaintiff can show that the tortfeasor acted with gross or wanton negligence. Gross negligence is an extreme departure from the ordinary standard of care.[43] In assessing whether a defendant's acts were grossly negligent, courts look to the reasonableness of a defendant's actions given the conditions at that time and not whether hindsight would shed more light upon whether any conditions could have served as red flags.[44]

When the evidence is viewed in a light most favorable to the plaintiff there is material issue of fact as to whether the defendant's actions constitute gross or wanton negligence. The record shows that the individual defendants knew or should have known that residents were making purchases at the Gift Shop that violated their dietary plans. Potts could buy pretzels that may have violated his specific dietary plan. Despite these potential risks volunteers working in the DVH Gift Shop were trained to allow all purchases. The volunteers were not given dietary information that would allow them to question a potentially dangerous purchase or to bring that purchase to the attention of the professional nursing staff. Plaintiffs' experts have provided opinions that the conduct violated the standard of care and constituted gross and/or wanton conduct. A jury could conclude from this record that the Gift Shop's policy posed an obvious and foreseeable danger and their failure to act or to even

---

[43] *Greenfield*, 211 A.3d at 1101.
[44] *Id.*

12

supervise this practice constituted evidence of gross and /or wanton negligent conduct. Such a conclusion would be supported by the present record. On this record summary judgment is not appropriate.

For the above reasons summary judgment as to the Delaware Veterans Home, Delaware Department of State and the State of Delaware is GRANTED. Summary Judgment as to Terry Hollinger, Sandra Groff and Archie Poling is DENIED.

**IT IS SO ORDERED**.

*Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge


cc:     Original to Prothonotary