SUPERIOR COURT
OF THE
STATE OF DELAWARE

RICHARD R. COOCH
RESIDENT JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE (302) 255-0664

Tabatha L. Castro, Esquire
The Castro Firm, Inc.
1719 Delaware Avenue
Wilmington, Delaware 19806
Attorney for Plaintiffs

Leonard G. Villari, Esquire
Villari, Lentz & Lynam, LLC
1600 Market Street, Suite 1800
Philadelphia, Pennsylvania 19103
Attorney *Pro Hac Vice* for Plaintiffs

Marc S. Casarino, Esquire
Dana Spring Monzo, Esquire
Nicholas Wynn, Esquire
White and Williams, LLP
824 North Market Street, Suite 902
Wilmington, Delaware 19801
Attorneys for Defendants Blue
Diamond LLC and Parkway
Gravel, Inc.

Re: **Thomas A Lynam, III and Antoinette M. Lynam, as Parents
and Natural Guardians of Thomas A. Lynam, IV, a minor, v.
Blue Diamond LLC and Parkway Gravel Inc. and Houghton's
Amusement Park, LLC
C.A. No. N14C-11-121 RRC**

Submitted: July 6, 2016
Decided: October 4, 2016

On Defendants Blue Diamond LLC's and Parkway Gravel,
Inc.'s Motion for Judgment on the Pleadings. **DENIED.**

Dear Counsel:

## I.      INTRODUCTION

Pending before this Court is Defendants Blue Diamond LLC's and Parkway Gravel, Inc.'s ("Defendants")[1] Motion for Judgment on the Pleadings. In their complaint, Plaintiffs allege that minor Thomas Lynam, IV ("Tommy") was riding

_____

[1] Defendant Houghton's Amusement Park, LLC did not make an appearance in this case and had a default judgment taken against it on June 21, 2016.

his motocross bicycle on Defendants' motocross track. After riding off a jump, Tommy landed, lost control of his motocross bicycle, and collided with a metal shipping container near the track. Tommy apparently sustained serious injuries. Plaintiffs' complaint raises one count of "negligence" as a theory for liability.[2] Although not listed as a separate count in their complaint, Plaintiffs allude in their general "negligence" claim to a theory of reckless conduct by Defendants in connection with the operation of the motocross track.

In their motion, Defendants assert that their alleged behavior was, as a matter of fact and law, neither negligent nor reckless. Alternatively, Defendants raise an affirmative defense that they are released from any liability for negligent or reckless conduct due to a release agreement (the "Release") signed by the Plaintiffs. Additionally, Defendants raise the doctrine of assumption of the risk as a separate affirmative defense as a bar to recovery.

Plaintiffs agree that they released Defendants from liability for Defendants' own "negligence." However, Plaintiffs contend that Defendants' conduct amounted to recklessness, and that Plaintiffs never released Defendants from liability for their allegedly reckless conduct. In response to Defendants' claim that Plaintiffs assumed the risk of injury, Plaintiffs contend that the risk of a collision with a metal shipping container was not contemplated at either the signing of the Release or when Tommy began using the facilities.

This Court concludes that the Release was not specifically tailored so as to release Defendants from liability for their allegedly reckless conduct. The Court also finds that the factual record is insufficiently developed to make a legal determination of whether Defendants' conduct as a matter of law amounted to recklessness. Finally, the Court concludes that it is premature at this juncture to consider Defendant's affirmative defense. Accordingly, the Court denies Defendants' Motion for Judgment on the Pleadings.

## II.    FACTUAL AND PROCEDURAL HISTORY

On January 6, 2013, Tommy, then thirteen years old, was riding a motocross bicycle at Blue Diamond Motocross near New Castle. Plaintiffs allege that the track was advertised as being composed of "safe jumps."[3] While riding, Tommy rode off a jump, made a hard landing, and was unable to stop in time before colliding with a large metal shipping container.

---

[2] Compl. ¶¶ 79-87.
[3] Compl. ¶ 48.

Prior to granting Tommy admission to the Blue Diamond facilities to ride his motocross bicycle, Blue Diamond required Tommy's father to sign a release agreement. The Release, entitled "Parental Consent, Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement," stated that Plaintiffs understood the "risks and dangers of serious bodily injury" posed by motocross and relieved Defendants from liability for their own negligence.[4] The Release also released Defendants from liability for injuries suffered by Plaintiffs through their own negligence.[5]

In their complaint, Plaintiffs allege that Defendants negligently allowed the container to remain on the premises at an unsafe distance from the motocross track.[6] While Plaintiffs do not specifically allege recklessness as a separate claim for recovery, but rather include it in a single count of "Negligence," Plaintiffs' complaint references reckless conduct as another potential theory of recovery.[7] Plaintiffs, however, now agree that their claims of negligence are barred by the Release.[8] But Plaintiffs assert that the Release did not specifically address or contemplate potential claims against Defendants for "reckless" behavior.[9]

---

[4] Defs.' Mot. for J. on the Pleadings, Ex. A.

[5] Defs.' Mot. for J. on the Pleadings, Ex. A. Tommy also signed an agreement, titled "Minor's Assumption of the Risk Acknowledgment," that Defendants reference in their motion as another reason they are not liable for Plaintiffs' injuries. However, it appears from the motion and subsequent filings that the release signed by Tommy is only mentioned in passing, and is not relied upon by Defendants. The release signed by Tommy's father is the determinative release in the case at bar.

[6] Compl. ¶¶ 79-87.

[7] Compl. ¶¶ 49, 51, 77, 87. Specifically, the Complaint alleges that "Defendants' failure to exercise reasonable care as alleged above comprised outrageous conduct under the circumstances, manifesting a wanton and reckless disregard of the rights of the Plaintiffs." Compl. ¶ 87. The Complaint also alleges that Tommy's injuries were caused by the "reckless indifference" of Defendants. Compl. ¶¶ 51, 77. Moreover, the Complaint alleges that the track was "reckless[ly] design[ed]." Compl. ¶ 49.

[8] At oral argument, Plaintiffs' counsel answered in the affirmative when the Court asked "Am I understanding Plaintiffs' position correctly when I read the papers to say that Plaintiffs are not alleging ordinary negligence, but rather recklessness?" *Lynam et al. v. Blue Diamond LLC Motocross et al.*, C.A. No. N14C-11-121 RRC, at 6 (Del. Super. July 6, 2016) (TRANSCRIPT) [hereinafter Oral Arg. Tr.].

[9] Defs.' Mot. for J. on the Pleadings, Ex. A.

## III. ANALYSIS

### A. *Standard of Review*

Under Superior Court Civil Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed.[10] The standard of review in the context of a motion for judgment on the pleadings requires a court to "accept all the complaint's well-pleaded facts as true and construe all reasonable inferences in favor of the non-moving party."[11] "The motion will be granted when no material issues of fact exist, and the moving party is entitled to judgment as a matter of law."[12] "The standard for a motion for judgment on the pleadings is almost identical to the standard for a motion to dismiss."[13]

### B. *The Parties Agree that the Release Bars Plaintiffs' Recovery Against Defendants for Any Negligence*

Defendants contend that the executed Release bars recovery for negligence. At oral argument on this motion, Plaintiffs agreed (Plaintiffs' filings were not explicit on this point) that the Release bars recovery for injuries resulting from Defendants' allegedly negligent conduct.[14] Although Plaintiffs are residents of Pennsylvania, the parties agree that Delaware law applies to the present motion, as Defendants are Delaware businesses and the incident giving rise to the case at bar occurred in Delaware.

Under Delaware law, parties may enter into an agreement that relieves a business owner of liability for injuries to business invitees that result from the

---

[10] A judgment on the pleadings is based only upon a review of Plaintiffs' complaint and Defendants' answer. However, under Rule 12(c), "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment." Super. Ct. Civ. R. 12(c). In the case at bar, Defendants introduced the two executed releases as exhibits to their motion. However, the releases were not a part of the pleadings. Nevertheless, the parties agree that this motion should be treated as a motion for judgment on the pleadings.

[11] *Silver Lake Office Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Jan. 17, 2014) (quoting *Blanco v. AMVAC Chem. Corp.*, 2012 WL 3194412, at *6 (Del. Super. Aug. 8, 2012)).

[12] *Id.* (quoting *Velocity Exp., Inc. v. Office Depot, Inc.*, 2009 WL 406807, at *3 (Del. Super. Feb. 4, 2009).

[13] *Id.* (internal quotation marks omitted).

[14] *See* Oral Arg.Tr. at 6.

4

owner's negligent conduct.[15]   However, the release must be unambiguous, not unconscionable, and not against public policy.[16]   Further, the release must be "'crystal clear and unequivocal' to insulate a party from liability for possible future negligence."[17]

In *Ketler v. PFPA, LLC*, the Delaware Supreme Court recently determined the validity of a release waiving liability for negligence.[18]   The release in *Ketler* provided:

> 'I understand and voluntarily accept this risk and agree that [the defendant] . . . will not be liable for any injury, including, without limitation, personal, bodily, or mental injury . . . resulting from the negligence of [the defendant] or anyone on [the defendant's] behalf whether related to exercise or not. Accordingly, I do hereby forever release and discharge [the defendant] from any and all claims, demands, injuries, damages, actions, or causes of action.'[19]

The Delaware Supreme Court held that the release was sufficiently clear and unequivocal, and that it expressly released the defendant from any and all causes of actions relating to the defendant's own negligence.[20]   Defendants rely heavily on this case, asserting that it applies to claims of reckless conduct.[21]

The Release that Plaintiffs executed in this case is also sufficiently "clear and unequivocal."   The Release provides:

> 3.  I consent to the Minor's participation in the Event(s) and/or entry into restricted areas and HEREBY ACCEPT AND ASSUME ALL SUCH RISKS, KNOWN AND UNKNOWN, AND ASSUME ALL RESPONSIBILITY FOR THE LOSSES, COSTS, AND/OR DAMAGES FOLLOWING SUCH INJURY, DISABILITY, PARALYSIS OR

---

[15] *Ketler v. PFPA, LLC*, 132 A.3d 746 (Del. 2016) (upholding "hold harmless" agreements and releases that relieve a proprietor from liability for its own negligent activities).

[16] *Id.* at 747-48.

[17] *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 55 A.3d 330, 336 (Del. 2012) (internal quotation marks omitted) (quoting *State v. Interstate Amiesite Corp.*, 297 A.2d 41, 44 (Del. 1972)).

[18] *Ketler*, 132 A.3d at 747.

[19] *Id.*

[20] *Id.*

[21] Oral Arg. Tr. at 14-16.

5

DEATH, EVEN IF CAUSED, IN WHOLE OR IN PART, BY THE *NEGLIGENCE* OF THE "RELEASEES" NAMED BELOW.

4.  I HEREBY RELEASE, DISCHARGE AND COVENANT NOT TO SUE the . . . track owners, [and] owners and lessees of premises used to conduct the Event(s) . . . all for the purposes herein referred to as "Releasees," FROM ALL LIABILITY TO ME, THE MINOR, [and] my and the minor's personal representatives . . . FOR ANY AND ALL CLAIMS, DEMANDS, LOSSES, OR DAMAGES ON ACCOUNT OF INJRY, including, but not limited to, death or damage to property, CAUSED . . . BY THE *NEGLIGENCE* OF THE "RELEASEES" OR OTHERWISE.[22]

Similar to the language at issue in *Ketler*, the Release expressly states that the signor assumes responsibility for injuries caused by Defendants' own negligent conduct.  The release also expressly states that the Defendants are released from any and all causes of action that may arise from Defendants' negligent conduct.  Accordingly, this Court agrees with the parties that the Release validly exculpates Defendants from liability for their own negligence.

Defendants also rely on *Lafate v. New Castle County*[23] and *Devecchio v. Delaware Enduro Riders, Inc.*[24] to support their position that the Release waives claims of reckless conduct.  Both *Lafate* and *Devecchio* concern agreements that released the tortfeasors from liability for their own negligent conduct.  Both cases also discussed whether the language of the releases was sufficiently tailored to release the tortfeasor's negligent conduct.  In *Lafate*, this Court refused to grant the defendant's motion for summary judgment on grounds that the release did not clearly and unambiguously release the tortfeasor from claims that it was negligent.[25]  In *Devecchio*, this Court granted the defendant's motion for summary judgment because the plaintiff signed a valid covenant not to sue for injury resulting from the plaintiff's own negligence.[26]

---

[22] Defs.' Mot. for J. on the Pleadings, Ex. A (emphasis added).

[23] 1999 WL 1241074 (Del. Super. Oct. 22, 1999).

[24] 2004 Del. Super. LEXIS 444 (Del. Super. Nov. 30, 2004).

[25] The plaintiff in *Lafate* was injured by a metal bar used to divide a basketball court.  This Court found that while the agreement did "speak[] of 'any and all injuries which may be suffered by [players] during [their] participation,'" the absence of the word "negligence" insufficiently insulated the defendants from liability for their own negligent conduct.  *Lafate*, 1999 WL 1241074, at *4.

[26] In *Devecchio*, the defendant owned a motorcycle race track that required riders to sign agreements releasing the defendant from liability for injuries resulting from both the riders and the defendant's negligence.  The release pertaining to the defendant's negligence expressly used

Defendants' reliance on these cases in light of Plaintiffs' potential claim of reckless conduct is inapposite. Because the parties have agreed that Defendants are insulated from claims of negligence, the question of whether the release clearly and unambiguously insulates the defendants from liability for their own negligent conduct is moot. Neither the holding in *Lafate* nor in *Devecchio* relate to allegations of reckless conduct. Accordingly, because Plaintiffs now assert that Defendant's conduct was reckless, *Lafate* and *Devecchio* are distinguishable from the case at bar.

Finally, the Court considers whether, for purposes of this motion, recklessness is subsumed in negligence, and is therefore barred as a form of negligence. *Prosser and Keeton on Torts* is particularly informative, providing that "such [exculpatory] agreements [that expressly exempt defendants from liability for their negligent conduct] generally are not construed to cover the more extreme forms of negligence, described as willful, wanton, reckless or gross, and to any conduct which constitutes an intentional tort."[27] Adopting *Prosser and Keeton's* interpretation, this Court finds that although the Release does insulate Defendants from liability for negligent conduct, it does not bar claims of "more extreme forms of negligence," such as "reckless" conduct.[28]

---

the word "negligence." This Court found that the release using the word "negligence" was sufficiently clear and unambiguous, and therefore insulated the defendant from liability for its own negligent conduct. *Devecchio v. Enduro Riders, Inc.*, 2004 Del. Super. LEXIS 444 (Del. Super. Nov. 30, 2004).

[27] W. Page Keeton, et al., *Prosser and Keeton on Torts*, § 68 at 483-84 (5th ed. 1984)). Delaware courts often rely on *Prosser and Keeton on Torts* in reaching their conclusions. *See, e.g.*, *Culver v. Bennett*, 588 A.2d 1094, 1097 (Del. 1991); *Lafate v. New Castle County*, 1999 WL 1241074 (Del. Super. Oct. 22, 1999); *Brzoska v. Olson*, 668 A.2d 1355, 1360 (Del. 1995).

[28] Additionally, the Delaware Civil Pattern Jury Instructions for negligence and recklessness are substantially different. The Delaware Civil Pattern Jury Instruction for negligence provides:

> This case involves claims of negligence. Negligence is the lack of ordinary care; that is, the absence of the kind of care a reasonably prudent and careful person would exercise in similar circumstances. That standard is your guide. If a person's conduct in a given circumstance doesn't measure up to the conduct of an ordinarily prudent and careful person, then that person was negligent. On the other hand, if the person's conduct does measure up to the conduct of a reasonably prudent and careful person, the person wasn't negligent.

Del. Super. P.J.I. Civ. § 5.1 (2003), http://courts.delaware.gov/forms/download.aspx?id=85928. On the other hand, the Delaware Civil Pattern Jury Instruction for reckless conduct states:

7

## C. *A Motion for Judgment on the Pleadings is Inappropriate at this Juncture in Light of any Undeveloped Claims of Reckless Conduct*

Although Tommy's father's execution of the Release precludes recovery from Defendants on a theory of "negligence," Plaintiffs assert that the Defendants' conduct was "reckless." Plaintiffs did not explicitly allege in a separate count of the complaint that Defendant's conduct was reckless, but Plaintiffs did make it apparent in the complaint that it was an intended theory of liability.[29] In their briefing and at oral argument, Plaintiffs suggested that Defendants, among other things, had been aware of previous collisions with the shipping container, and that their ignorance of these prior incidents amounts to reckless behavior.[30] Accordingly, the Court must determine whether the Release bars Plaintiffs from asserting claims resulting from injuries caused by Defendants' reckless conduct.

Courts in Delaware have a strong preference for resolving cases on their merits, or at least allowing discovery to proceed such that additional evidence in support of the parties' contentions can be developed.[31] While this preference is not

---

Reckless conduct reflects a knowing disregard of a substantial and unjustifiable risk. It amounts to an "I don't care" attitude. Recklessness occurs when a person, with no intent to cause harm, performs an act so unreasonable and so dangerous that he or she knows, or should know, that harm will probably result.

Del. Super. P.J.I. Civ. § 5.9 (2003), http://courts.delaware.gov/forms/download.aspx?id=85928. It is apparent from a comparison of the two different jury instructions that negligence conduct requires a departure from the ordinary standard of care exhibited by the reasonably prudent person, an objective standard. However, in contrast, it appears from the pattern jury instructions that reckless conduct requires a subjective "I don't care" attitude that evidences an even greater departure from the ordinary standard of care, amounting to an unreasonable conscious disregard of a known risk.

[29] Compl. ¶¶ 49, 51, 77, 87. For example, Plaintiffs allege that "The reckless design of the track, which was intentionally constructed next to the pre-existing intermodal container, requires riders to land from a jump and immediately decelerate in order to execute a 90° right turn." Compl. ¶ 49. Moreover, Plaintiffs allege that Tommy's injuries were "a direct and proximate result of the negligence, carelessness and reckless indifference of Defendants." Compl. ¶ 77.

[30] Pl.'s Suppl. Resp. in Opp'n to the Mot. for J. on the Pleadings, at 2.

[31] *Keener v. Isken*, 58 A.3d 407, 409 (Del. 2013); s*ee also Wallace v. Wood*, 2007 WL 3331530 (Del. Ch. Oct. 31, 2007); *DeSantis v. Chilkotowsky*, 2004 WL 2914314, at *2 (Del. Super. Nov. 18, 2004), Sup. Ct. Civ. R. 56.

outcome-determinative, the preference for resolving cases on the merits is a strong factor in determining whether to grant or deny a dispositive motion.

Plaintiffs, at oral argument and in their response to the motion, argue that they are entitled to recovery based on Defendants' allegedly reckless conduct. The parties agree that this theory is separate from the one count of "negligence" listed in the complaint.[32] The operative language of the Release does not explicitly enumerate or contemplate recklessness as a theory of recovery barred by the Release. Under Delaware law, as provided in *Ketler*, a release must be "clear and unambiguous" in order to effectively release the business owner from liability.[33]

This Court finds that the language of the release is not "clear and unambiguous" with respect to Defendants' liability for their own allegedly reckless conduct. In *Ketler*, the release at issue specifically used the word "negligence," and stated that Defendants "will not be liable for any injury, including, without limitation, personal, bodily, or mental injury . . . resulting from the negligence of [the defendants]." The Delaware Supreme Court held that this language satisfied the "clear and unequivocal" standard and upheld the language of the agreement.

Turning to the Release that Plaintiffs executed, this Court finds that the Release is silent as to claims of recklessness. The Release does not mention "reckless" conduct, and instead only expressly refers to injury caused by Defendants' "negligence." In the absence of such language, the Release does not clearly and unambiguously exculpate Defendants from liability for their own reckless conduct. Accordingly, the Release does not operate to bar Plaintiffs' claim of recklessness.[34]

---

[32] Plaintiffs did not plead any explicit claim of recklessness. *See, e.g.*, *J.L. v. Barnes*, 33 A.3d 902, 916 n.77 (De. 2011) (treating recklessness and gross negligence as interchangeable and noting, "In order for a plaintiff to plead gross negligence with the requisite particularity, the plaintiff must articulate 'facts that suggest a *wide* disparity between the process [] used . . . and that which would have been rational.'" *J.L.* states that a complaint pleading ten pages of facts to support a claim of gross negligence or recklessness was sufficient to meet the pleading standard). Defendants argue that Plaintiffs have not properly pleaded reckless conduct under Superior Court Civil Rule 9(b). However, the Court need not reach that issue since it will give Plaintiffs the opportunity to amend their complaint.

[33] *Ketler*, 132 A.3d at 747.

[34] Because the Court finds that Defendants' release does not explicitly bar claims of "reckless" conduct, this Court does not reach the question of whether such a release is potentially permissible under Delaware law. However, this Court notes that other jurisdictions have differing perspectives on whether exculpatory agreements barring claims for recklessness, gross negligence, willful acts, or strict liability are enforceable. *See* Randy J. Sutton, Annotation,

This Court holds that the Release does not bar claims of reckless conduct. This Court expresses no opinion at this juncture as to whether Plaintiffs ultimately can establish claims against for recklessness. Accordingly, the Court denies Defendants' Motion for Judgment on the Pleadings, and will grant Plaintiffs leave to conduct further discovery with the option of potentially amending the complaint in support of their contention that Defendants' conduct was "reckless."[35]

### D. *The Court does Not Reach Defendant's Argument under the Doctrine of Assumption of the Risk*

Finally, Defendants' contend that Plaintiffs assumed the risk of injury from Defendants' alleged reckless conduct. However, the record has not been sufficiently developed to determine whether Defendants' conduct was reckless or whether Plaintiffs assumed the risk of injury from Defendants' allegedly reckless

---

*Validity, Construction, and Effect of Agreement Exempting Operator of Amusement Facility from Liability for Personal Injury or Death of Patron*, 54 A.L.R.5th 513 (1997). For example, in *Barker v. Colo. Region-Sports Car Club of Am.*, the Colorado Court of Appeals held that exculpatory agreements can release a party only for simple negligence, and not from willful and wanton negligence. 532 P.2d 372, 377 (Colo. App. 1974). Similarly, in *Wheelock v. Sport Kites, Inc.*, the United States District Court for the District of Hawaii held that a release was invalid with respect to claims of gross negligence and strict liability. 839 F.Supp. 730, 736 (D. Haw. 1993). The above annotation suggests that a common reason to not enforce such an agreement is because they are void against the state's public policy.

Alternatively, other jurisdictions have upheld agreements that exculpate business owners for reckless conduct or strict liability. For example, in *Murphy v. N. Am. River Runners, Inc.*, the West Virginia Supreme Court discussed the matter, stating:

> Generally, in the absence of an applicable safety statute, a plaintiff who *expressly* and, under the circumstances, *clearly* agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct may not recover for such harm, unless the agreement is contrary to public policy. When such an express agreement is freely and fairly made, between two parties who are in equal bargaining position, and there is no public interest with which the agreement interferes, it will generally be upheld.

412 S.E.2d 504, 508-09 (W. Va. 1991).

[35] Delaware Courts have previously allowed such an amendment to be made. As this Court held in *Guy v. Phillips*, a party may amend a complaint following additional discovery when the amended count arises out of the same factual basis for the original complaint. 1997 WL 524124 (Del. Super. July 2, 1997).

conduct.[36]  Accordingly, the Court does not reach this contention at this stage of the litigation.

## IV.   CONCLUSION

Defendant's Motion for Judgment on the Pleadings is **DENIED**.  The Court has enclosed an Order establishing a Scheduling Conference in this case.

Very truly yours,

 */s/ Richard R. Cooch*
Richard R. Cooch, R.J.

oc:   Prothonotary

---

[36] In support of this defense, the Court notes that Defendants rely solely on *Deuley v. DynCorp Int'l, Inc.*, 2010 WL 704895 (Del. Super. Feb. 26, 2010).  However, *Deuley* is distinguishable from the case at bar.  In *Deuley*, surviving relatives of decedents killed by an improvised explosive device ("IED") in Afghanistan filed a wrongful death action.  As part of the employment agreement, the decedents signed an agreement that provided employees expressly assumed the risk of injury or death.  In reaching its conclusion that the decedents assumed the risk of death, the Court found that "when [the decedents] signed the releases, even a poorly informed American had to have appreciated that working in Afghanistan involved the general risk of insurgent or terrorist attacking by an IED."  *Deuley*, 2010 WL 704895, at *4.  "The complaint offers no reason to find that any plaintiff here was probably unaware of the general risk of being injured or killed by a bomb."  *Id.*  In the case at bar, drawing inferences in the light most favorable to the Plaintiffs, it is unlikely that Plaintiffs were aware of the risk posed by the shipping container, since they allege that they were unable to inspect the track prior to Tommy using it.  Accordingly, Defendants' reliance on *Deuley* is inapposite since it could be determined that a collision with the metal shipping container was not contemplated by the Plaintiffs when they signed the Release.