## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FEENIX PAYMENT SYSTEMS, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. N23C-12-135 EMD CCLD |
| v. | ) ) ) | |
| JEFFREY BLUM and MICHAEL BLUM, | ) ) | |
| Defendants. | ) | |

Submitted: May 20, 2024
Decided: August 19, 2024

*Upon Defendants' Motion to Dismiss Complaint*
***GRANTED in part and DENIED in part***

Geoffrey G. Grivner, Esq., Andrew G. Hope, Esq., Buchanan Ingersoll & Rooney PC, Wilmington, Delaware. *Counsel for Plaintiffs Feenix Payment Systems, LLC, FVP Opportunity Fund GP, LLC, Feenix Venture Partners Opportunity Fund, LP, Feenix Venture Partners, LLC and FVP Smithfield, LLC.*

Jesse L. Noa, Esq., Andrew M. Moshos, Esq., Potter Anderson & Corroon, Wilmington, Delaware, Andrew Moss, Esq., Kutner Rubinoff & Moss, LLP, Coconut Grove, Florida. *Counsel for Defendants Jeffrey Blum and Michael Blum.*

**DAVIS, J.**

### I.    INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of the Court. Plaintiffs, Feenix Payment Systems, LLC (the "Company"), FVP Opportunity Fund GP, LLC ("Fund GP"), Feenix Venture Partners Opportunity Fund, LP ("Feenix Opp. Fund"), Feenix Venture Partners, LLC ("Partners LLC"), and FVP Smithfield, LLC ("FVP Smithfield") (collectively, the "Feenix Entities") allege that Defendants Jeffrey Blum and Michael Blum

(collectively, the "Blums") breached the Operating Agreement (as defined below) and interfered with the Feenix Entities' business operations.[1]

The Feenix Entities filed their complaint (the "Complaint") on December 14, 2023. The Feenix Entities assert claims for: (i) Breach of the Operating Agreement against the Blums; (ii) Tortious Interference with Contractual Relations against Michael Blum; (iii) Civil Conspiracy against the Blums; and (iv) Contractual Indemnity Under the Separation Agreement against Michael Blum.[2]

The Blums filed Defendants Motion to Dismiss Complaint (the "Motion") on February 13, 2024.[3] The Motion seeks to dismiss the Complaint in its entirety.[4] The Blums argue that the Feenix Entities have failed to state a claim upon which relief can be granted because: (i) the Feenix Entities have engaged in claim splitting as a nearly identical lawsuit was tried in December 2023; and (ii) the *McWane* doctrine supports dismissal.[5] The Feenix Entities oppose the Motion and filed their opposition (the "Opposition") on March 21, 2024.[6] The Blums filed their reply on March 27, 2024.[7] The Court held a hearing on the Motion on May 20, 2024. At the conclusion of the hearing, the Court took the Motion under advisement.

For the reasons stated below, the Motion is **GRANTED** in part and **DENIED** in part. The Court grants the Motion as to dismissal of the Complaint. The Court denies any request for sanctions against the Feenix Entities.

---

[1] *See* Compl. (D.I. No. 1).
[2] *See generally* Compl.
[3] Defs.' Mot. to Dismiss (hereinafter "Mot.") (D.I. No. 8).
[4] *See* Mot.
[5] *See generally* Mot.
[6] Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss (hereinafter "Pls.' Opp'n") (D.I. No. 11).
[7] Defs.' Reply Br. in Supp. of Mot. to Dismiss (hereinafter "Defs.' Reply") (D.I. No. 12).

## II.    RELEVANT FACTS[8]

### A. THE PARTIES.

Collectively, the Feenix Entities are Delaware LLCs with their principal places of business in New York, New York.[9]  Although not a party, Keith Lee is the principal and founding member of the Feenix Entities which were first organized in 2017.[10]

Jeffrey Blum and Michael Blum are individuals residing in Florida.[11]  Jeffrey Blum became a member of the Feenix Entities in 2018 and began accepting distributions, approving board actions, participating in capital calls, and receiving confidential and proprietary information.[12]  Michael Blum – Jeffrey Blum's son – invested in the Feenix Entities around October of 2017.[13]  Michael Blum then exited the Feenix Entities in 2020.[14]  As part of his exit, Michael Blum entered into a separation agreement (the "Separation Agreement").[15]  Jeffrey Blum remains a member of the Feenix Entities.[16]

### B. THE FEENIX ENTITIES AND THE BLUMS.

The Blums entered into Fund GP's Limited Liability Company Agreement (the "Operating Agreement") as part of their investments in the Feenix Entities.[17]  Under the Operating Agreement, "Holders" were designated as "Restricted Parties" and received confidential and proprietary information relating to the Feenix Entities.[18]  The Operating

---

[8] The facts are drawn from the Complaint and are presumed to be true for the purposes of this Motion.  The Court is permitted to take judicial notice of court records in a companion litigation on a motion to dismiss.  *See Dep't of Fin. v. Univar, Inc.*, 2020 WL 2569703, at *1 n.1 (Del. Ch. May 21, 2020).  Therefore, where necessary, I draw on the motions, orders, and transcripts in C.A. No. N21C-05-099 EMD CCLD (hereinafter the "Prior Litigation").
[9] Compl. ¶¶ 11-15.
[10] *Id.* ¶ 26.
[11] *Id.* ¶¶ 16-17.
[12] *Id.* ¶¶ 1, 19.
[13] *Id.* ¶ 1.
[14] *Id.* ¶ 4.
[15] *Id.*
[16] *Id.* ¶ 6.
[17] *Id.* ¶ 2.  The Feenix Entities did not attach the Operation or Separation Agreement to the Complaint.
[18] *Id.* ¶ 3.

3

Agreement prohibited Holders from "using, copying or disclosing" this protected information without prior written consent from Fund GP's Board of Managers (the "Restrictive Covenants").[19]

Michael Blum was bound by the Restrictive Covenants for a period of 18 months following his May 2020 Separation.[20] The Separation Agreement expressly integrated the Restrictive Covenants of the Operating Agreement.[21] The Separation Agreement also contained an Indemnification Provision.[22]

---

[19] *Id.* The Restrictive Covenants are as follows:

> (a) Each of the Holders and each Board Member (collectively, the "Restricted Parties") recognizes and acknowledges that such Restricted Party will be entrusted with or have access to confidential and proprietary information which is the property of the Companies and/or third parties to which the Companies owe a duty of confidentiality (whether pursuant to Applicable Law, by contract or otherwise). Each Restricted Party therefore agrees that, at all times while such Restricted Party is a Holder or Manager, and for a period of eighteen (18) months thereafter, such Restricted Party shall (i) not, without the prior written consent of the Board of Managers, directly or indirectly, use, copy or duplicate, or disclose or otherwise make available to any third party, any Confidential Information (as defined below) other than in the performance of such Restricted Party's duties with respect to the Companies, (ii) take such protective measures as may be reasonably necessary to preserve the secrecy and interest of the Companies (or, if applicable, of a third party to which the Companies owes a duty of confidentiality) in the Confidential Information and (iii) not, without the prior written consent of the Board of Managers, utilize or convert Confidential Information for such Restricted Party's own benefit or gain, of whatever nature other than in performance of such Restricted Party's duties with respect to the Companies. As used herein, the term "Confidential Information" shall mean trade secrets and other non-public information, whether tangible or intangible, in any form or medium, relating to the business or affairs of the Companies that is proprietary to the Companies (or relating to the business or affairs of a third party to which the Companies owes a duty of confidentiality) and which the Companies makes reasonable efforts to keep confidential.

Compl. ¶ 28.

[20] *Id.* ¶ 31.

[21] *See id.* ¶ 32.

[22] The indemnification provision was as follows:

> (c) The Redeemed Member shall indemnify and hold the Company and the Fund GPs harmless from any and all Claims, arising out of or resulting from, directly or indirectly, (i) any matter arising from or in connection with a breach by the Redeemed Member of the Operating Agreement prior to the Effective Date that constitutes fraud, willful misconduct, or a knowing violation of law by the Redeemed Member; (ii) any breach by the Redeemed Member of any covenant or obligation contained in this Agreement; and (iii) any breach or inaccuracy of any representation, warranty, or covenant by the Redeemed Member contained in this Agreement . . . .

Compl. ¶ 33.

## C. THE FVP SMITHFIELD LEASE.

On December 28, 2017, PBM Partners LLC ("PBM")[23] and FVP Smithfield entered into an office lease for two properties, one located at 340 3rd Avenue, Pittsburgh, PA 15222 and the other on the second floor of the Pitt Building in Pittsburgh, PA (collectively, the "Building").[24] Michael Blum is PBM's registered agent and the company's manager.[25] Jeffrey Blum is an investor in PBM.[26] The Building became an "upscale working share space" that included "furniture, fixtures, and equipment" ("FF&E") and was named the "Americus Club."[27] FVP Smithfield invested $1.6 million into the Americus Club at the Building.[28]

In April 2019, FVP Smithfield and Feenix Opp. Fund entered into a "senior secured revolving loan facility and loan and security agreement" ("Loan Agreement") with certain "Lenders"[29] and their administrative agent, Midtown Madison Management, LLC ("Midtown").[30] On April 24, 2019, Midtown filed a UCC Financing Statement with the Delaware Department of State (the "Lien") against debtor, FVP Smithfield.[31] The Lien covered "all assets of the debtor, whether now owned or hereafter acquired, including all products and proceeds thereof."[32] The Feenix Entitles assert this includes the FF&E at the Building.[33]

On August 14, 2020, Midtown executed a notice of senior security interest on the assets of FVP Smithfield.[34] On August 17, 2020, the notice of senior security interest was forwarded to

---

[23] PBM is a Florida LLC, with its principal place of business in Miami, Florida. *Id.* ¶ 35.
[24] *Id.* ¶ 34.
[25] *Id.* ¶ 36.
[26] *Id.* ¶ 37.
[27] *Id.* ¶ 39.
[28] *Id.*
[29] The Complaint refers to "Lenders" and "New Lender" without naming either entity.
[30] Compl. ¶ 40.
[31] *Id.* ¶ 41.
[32] *Id.* ¶ 42.
[33] *Id.* ¶ 43.
[34] *Id.* ¶ 44.

both PBM and Michael Blum by email and overnight delivery.[35]  On October 28, 2020, Midtown issued a notice of a private sale for the FF&E in the Building.[36]  On November 30, 2020, the FF&E was sold in a private sale to Feenix Opp. Fund for $250,000 which was then transferred to Midtown.[37]  On December 1, 2020, Mr. Lee, representing Feenix Opp. Fund sent an email to Michael Blum advising him of the Sale.[38]

### D.  THE DECEMBER LETTER.

After the sale of the FF&E, Mr. Lee was working on a refinancing deal on behalf of Feenix Opp. Fund with Lenders and a New Lender.[39]  On December 16, 2020, Mr. Lee sent a confidential email (the "December E-mail") to Feenix Opp. Fund's limited partners, including Jeffrey Blum.[40]  The December E-mail included a request for approval to enter into a new credit facility with a new lender in order to replace the old lender.[41]  A term sheet associated with the refinancing deal was attached to this email.[42]

On December 18, 2020, the day the refinancing deal was set to close, the Lenders informed Mr. Lee that they had received a letter from Jacob S. Frenkel, an attorney for PBM (the "December Letter").[43]  The December Letter was addressed to the Managing Director and Senior Counsel for Lenders, and had the following subject line, "Re: Possible Sham $250,000 Private

---

[35] *Id.* ¶ 45.
[36] *See id.* ¶ 46.
[37] *Id.* ¶ 48.
[38] *Id.* ¶ 49.
[39] *Id.* ¶ 50.
[40] *Id.* ¶ 51.
[41] *Id.*
[42] *Id.*
[43] *Id.* ¶ 56.  Plaintiffs did not attach the December Letter to the instant Complaint despite quoting it extensively.  The Court quoted the December Letter in full in *Feenix Payment Systems, LLC, et. al., v. Blum*, 2022 WL 215026, at *2-4 (Del. Super. Jan. 25, 2022).

Transaction and Fraudulent Claim of Security Interest."[44] As a result of the December Letter, the refinancing deal was purportedly put on pause.[45]

Following the December Letter, the Lenders demanded additional assurances from Feenix Opp. Fund, including an additional payment of $50,000 to offset any short-term expenses associated with the December Letter, a deposit for any suits brought or threatened against the New Lender, and the New Lender required reassurances with respect to the actions of Michael Blum.[46] Ultimately, the New Lender informed the Feenix Entities that they would not be engaging in business with Mr. Lee or the other Feenix Entities.[47]

The Feenix Entities later discovered that Jeffrey Blum had forwarded the December E-Mail to Michael Blum without the Feenix Entities consent.[48] The Feenix Entities also discovered that Jeffrey Blum, in addition to the December E-Mail, had continued to disclose the Feenix Entities financial statements, and other confidential and proprietary information (the "Confidential Information") to Michael Blum.[49] The Feenix Entities allege that the Blums' conspired to use its Confidential Information to further the Blums' financial interest in PBM.[50]

The Feenix Entities filed suit on December 14, 2023, alleging that: (i) the Blums' Breached the Operating Agreement by disclosing confidential information to third parties; (ii) Michael Blum Tortiously Interfered with Contractual Relations by "soliciting and encouraging" Jeffrey Blum to disclose the Confidential Information; (iii) the Blums' engaged in Civil

---

[44] Compl. ¶ 57.
[45] *Id.* ¶ 59.
[46] *See id.* ¶¶ 69-72.
[47] *Id.* ¶ 67.
[48] *Id.* ¶ 53. The Feenix Entities became aware of this fact in April 2023, during the discovery process for the Prior Litigation. *Id.* ¶¶ 53-54.
[49] *Id.* ¶ 54. These facts were also revealed during discovery of the Prior Litigation in July 2023. *Id.*
[50] *Id.* ¶ 55.

7

Conspiracy; and (iv) the Feenix Entities are entitled to Contractual Indemnity from Michael Blum pursuant to the Separation Agreement.[51]

### E. THE PRIOR LITIGATION.

On May 11, 2021, the Feenix Entities filed suit against Michael Blum (the "Prior Litigation").[52] The plaintiffs in the Prior Litigation are substantially the same as the Feenix Entities with the following exceptions: (i) the Prior Litigation included FVP Opportunity Fund II GP, LLC, and Mr. Lee; and (ii) excluded Feenix Venture Partners, LLC.[53] Michael Blum was the defendant in the Prior Litigation.[54] The Prior Litigation initially consisted of the following claims against Michael Blum: (i) Breach of the Operating Agreement's Restrictive Covenants; (ii) Breach of the Separation Agreement's Mutual Non-Disparagement Clause; (iii) Tortious Interference with Business Expectation; (iv) Defamation; and (v) Defamation Per Se.[55] Michael Blum filed a motion to dismiss in the Prior Litigation. The Court Dismissed Counts III-IV on January 25, 2022.[56] On February 7, 2022, the Court granted summary judgment in favor of Michael Blum on count I and denied summary judgment as to count II.[57]

On October 13, 2023, the plaintiffs filed a motion for leave to file an amended complaint and case management order (the "Motion to Amend").[58] Through the Motion to Amend, the Prior Litigation plaintiffs sought to add Jeffrey Blum as a second defendant "based on information learned in discovery revealing that Jeffrey Blum unlawfully, and in breach of his

---

[51] *See* Compl.
[52] *See Feenix Payment Systems, LLC v. Blum*, 2024 WL 2768386, at *1 (Del. Super. May 29, 2024) (cited as "Prior Litigation").
[53] *Id*.
[54] *Id*.
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *See* Mot., Ex. 1 (hereinafter "Mot. to Amend"). As a result of prior orders and stipulations, Feenix Venture Partners Opp. Fund, LP, FVP Smithfield, and Mr. Lee had been dismissed from the case. *Id*. at 1 n.1.

contractual obligations, provided confidential information to Michael Blum."[59] The Prior Litigation plaintiffs, in the Motion to Amend, also represented that the claims against Jeffrey Blum concerned the same facts and circumstances as those at issue in the Prior Litigation and resulted in the same damages sought.[60] On November 15, 2023, the Court granted a joint stipulation regarding withdrawal of the Motion to Amend and to amend case management order.[61]

The Prior Litigation proceeded to trial on December 4, 2024.[62] The Court issued its Decision after Trial on May 29, 2024.

### III.    STANDARD OF REVIEW

Upon a motion to dismiss, the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[63] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[64] Any additional facts discussed that are not in the Complaint are either not subject to reasonable dispute or subject to judicial notice.[65]

---

[59] *See* Mot. to Amend at 1.
[60] *Id.*
[61] *See* Prior Litigation, Order Granting Withdrawal (D.I. 154).
[62] *See* Prior Litigation, Trial Worksheet (D.I. No. 160).
[63] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy*, No. 09C-09-136, 2010 WL 5825353, at *3 (Del. Super. Oct. 27, 2010).
[64] *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998).
[65] *Dep't of Fin.*, 2020 WL 2569703, at *1.

## IV.   DISCUSSION

### A.   THIS CIVIL ACTION IS PRECLUDED AS CLAIM SPLITTING.

Claim splitting falls within the doctrine of claim preclusion.[66]  Delaware courts apply the transactional approach to claim splitting which "considers a second lawsuit precluded if it arises from the same transaction as a previous adjudication."[67]  "If the plaintiff knows or could have known those common facts at the time of the first action, then the doctrine of claim preclusion bars the claim in the second action."[68]  The rationales behind the doctrine are, "(1) that no person should be unnecessarily harassed with a multiplicity of suits; and (2) a litigant should be prohibited from getting two bites at the apple."[69]

Importantly, "the rule against claim splitting is not limited to complaints that are word-for-word identical or present identical theories."[70]  To prevail on a theory of claim splitting a defendant must establish that the same transaction forms the basis for the prior and subsequent actions, and that "the plaintiff must have not raised a claim in the first action that he or she should have, in fairness, raised."[71]  If a defendant proves these two elements, than the plaintiff holds the burden to show that they could not have raised their claims in the first case.[72]  "A final judgment in the first action is not an element of claim splitting."[73]

---

[66] *Ford v. Sedgwick Claims Management Services*, Inc., 2020 WL 2557141, at *3 (Del. Super. May 20, 2020).
[67] *Id.*
[68] *Id.*
[69] *Daugherty v. Dondero*, 2023 WL 461112, at *3 (Del. Ch. Jan. 27, 2023) (internal quotation marks omitted) (quoting *J.L. v. Barnes*, 33 A.3d 902, 918 (Del. Super. June 17, 2011)).
[70] *Goureau v. Lemonis*, 2021 WL 1197531, at *9 (Del. Ch. Mar. 30, 2021); *see also Ford*, 2020 WL 2557141, at *3 ("Under the transactional approach, resolving the first suit may bar a claim in the second, even if the plaintiff pursues a different substantive theory of recovery than in the first.").
[71] *Ford*, 2020 WL 2557141, at *4.
[72] *See Daugherty*, 2023 WL 461112, at *3.
[73] *See id.*

Claim splitting "presumes that the interest of fairness will require a plaintiff to present all of his theories relating to one transaction in a single action."[74]  In determining whether two claims arise out of the same transaction or same common nucleus of operative facts, the Court is to take a "pragmatic assessment."[75]  Some of the things the Court should consider are:

> [O]n the one hand, the interests of the defendant and of the courts in bringing litigation to a close and, on the other, the interest of the plaintiff in the vindication of a just claim . . . . Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes.  Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first.  If there is a substantial overlap, the second action should ordinarily be held precluded.[76]

## B.  THE FEENIX ENTITIES HAVE ENGAGED IN CLAIM SPLITTING.

The Blums assert that the Feenix Entities have impermissibly split their claims because: (i) Michael Blum was the sole defendant in the Prior Litigation, which alleged he breached the parties' agreement; (ii) the Feenix Entities filed the Motion to Amend to add Jeffrey Blum as a party, argued to the Court that the claims against Jeffrey Blum concerned the same facts and circumstances underlying the Prior Litigation, and then voluntarily withdrew the Motion to Amend; and (iii) each count of the Complaint arise out of the identical facts that were presented and tried in the Prior Litigation.[77]

The Feenix Entities seek to distinguish the instant matter from other claim splitting situations.  The Feenix Entities contend that, given the difference in the parties and claims at

---

[74] *J.L. v. Barnes*, 33 A.3d 902, 917 (Del. Super. June 17, 2011).
[75] *Hawkins v. Daniel*, 2021 WL 3732539, at *13 (Del. Ch. Aug. 24, 2021).
[76] *Id.* (quoting Restatement (Second) of Judgments § 24 cmt. b (1982)).
[77] *See* Mot. at 10-15.

11

issue, the Court should not grant dismissal because they "did not and could not have known the full scope of Defendants' actions in initiating the Prior Litigation."[78]

Comparing the Prior Litigation to this action, the Court finds that the Feenix Entities have improperly engaged in claim splitting by filing this action arising from the same alleged conduct and injuries as the Prior Litigation. The Prior Litigation involved virtually the same plaintiffs with the exception of Feenix Venture Partners, LLC and Mr. Lee., and one of the same defendants, Michael Blum.[79] The addition of Jeffrey Blum or the fact that the plaintiffs are not identical is of little importance where, as here, the claims alleged arise out of the same transaction and common nucleus of operative facts.[80]

As a threshold matter, the Feenix Entities admit in the Complaint that they knew of Jeffrey Blum's disclosure of the December E-mail to Michael Blum by April 2023.[81] In the Complaint, the Feenix Entities also admit to knowing as early as July 2023 about Jeffrey Blum's continued disclosures of Confidential Information to Michael Blum.[82] However, the Feenix plaintiffs in the Prior Litigation waited until October 13, 2023 to file the Motion to Amend.[83]

In the Opposition, the Feenix Entities contend that the Prior Litigation only concerned the actions of Michael Blum because they were not aware of Jeffrey Blum's involvement. Therefore, any "transactions" in the Prior Litigation only concerned Michael Blum's conduct leading up to and including the December Letter.[84] The Feenix Entities maintain that this action

---

[78] *See* Pls.' Opp'n at 11-12.
[79] *See* Compl.
[80] *See Goureau*, 2021 WL 1197531, at *9 ("A second complaint may include additional defendants or assert additional theories and still be barred.").
[81] *See* Compl. ¶ 53.
[82] *See id.* ¶ 54 ("[I]n July 2023, M. Blum provided sworn deposition testimony confirming that he had received the December 16, 2020 email from J. Blum and that his father continued to disclose Plaintiffs' financial statements and other confidential and proprietary information without authorization into January 2021.").
[83] *See* Mot. to Amend.
[84] Pls.' Opp'n at 18.

12

"includes the actions of both [Michael] Blum and [Jeffrey] Blum in obtaining and misappropriating the Feenix Entities' proprietary business information to benefit their own business interest."[85]  The Feenix Entities seem to contend that because the claims "arise from distinctly separate (if admittedly related) transactions" there has been no claim splitting.[86]  Taking each count in turn and comparing it to the Prior Litigation, the Court finds that the Feenix Entities are attempting to re-litigate the claims raised in the Prior Litigation.

### 1. Claim Splitting as to Counts I-IV.

Count I of the Complaint alleges Breach of the Operating Agreement against the Blums based on the Blums "disclosing Plaintiffs' Confidential Information to third parties without prior written consent."[87]  The Prior Litigation also contained a count for breach of the Operating Agreement's Restrictive Covenants.[88]  On April 26, 2022, the Court held a summary judgment hearing in the Prior Litigation.  At the conclusion of the hearing, the Court dismissed the breach of the Operating Agreement claim.[89]  As such, Count I as to Michael Blum was squarely raised and addressed in the Prior Litigation.

Count I as to Jeffrey Blum relates in the same "time, space, origin, and motivation" as in the Prior Litigation.[90]  This claim against Jeffrey Blum centers entirely on the Operating Agreement and the events that occurred after Michael Blum's departure from the Feenix Entities.  Therefore, any purported breach by Jeffrey Blum would have occurred at the same time as the actions alleged in the Prior Litigation.[91]

---

[85] *Id.* (alteration in original).
[86] *Id.*
[87] *See* Compl. at 19-20.
[88] *See Feenix Payment Systems, LLC, et. al., v. Blum*, 2022 WL 215026 (Del. Super. Jan. 25, 2022).
[89] *See* Prior Litigation, Judicial Action Form (D.I. 49).
[90] *See Ford*, 2020 WL 2557141, at *4.
[91] Under Count I the Feenix Entities alleged that the Blums' breached the Operating Agreement by, "disclosing Plaintiffs' Confidential Information to third parties," and by "utilizing and/or converting Plaintiffs' Confidential Information for their own benefit or gain."  *See* Compl. ¶¶ 77-78.

The Prior Litigation went to trial on essentially one issue, breach of the Separation Agreement.[92] The Separation Agreement incorporated the Restrictive Covenants of the Operating Agreement.[93] There is substantial overlap between the instant Count I and the claim raised in the Prior Litigation such that the Feenix Entities should have brought all their claims related to the Restrictive Covenants in the Prior Litigation.

Count II of the Complaint alleges tortious interference with contractual relationship against Michael Blum, alleging Michael Blum "interfered with Jeffrey Blum's contractual obligations to Plaintiffs."[94] The Feenix Entities assert that Michael Blum "knowingly solicit[ed] and encourage[ed] Jeffery Blum to disclose and use Plaintiffs' Confidential Information."[95] This claim arises out of the identical facts and evidence available in the Prior Litigation.

The Prior Litigation concerned Michael Blum's alleged breach of the Restrictive Covenants, as incorporated into the Separation Agreement, which protects the Confidential Information.[96] The Feenix Entities could have brought this claim against Michael Blum in the Prior Litigation as Michael Blum was the sole defendant in the Prior Litigation. The Feenix Entities assert they were foreclosed from pursuing this claim in the Prior Litigation "as a result of Defendants' opposition to their requests to extend discovery and to amend their pleadings."[97] As noted, the Feenix Entities knew of Jeffrey Blum's disclosures as early as April 2023,[98] and the Court was readily available to

---

[92] *See* Prior Litigation, Judicial Action Form (D.I. 49).
[93] *See* Compl. ¶¶ 30-32.
[94] *Id.* ¶ 84.
[95] *Id.* ¶ 83.
[96] *See generally* Defs.' Mot., Ex. 3 ("Motions Hr'g Tr.").
[97] Pls.' Opp'n at 21.
[98] Compl. ¶ 53.

address any discovery issues that may have arisen throughout the course of the Prior Litigation.

Count III of the Complaint brings a claim for civil conspiracy against the Blums.[99] This allegation relies on the use and disclosure of the Confidential Information. This allegation was central to the Prior Litigation and was, in fact, raised as part of the Motion to Amend.[100] Because, the Feenix Entities tried to assert this claim in the Prior Litigation it follows that the claim arises from the same transaction and common nucleus of facts of the Prior Litigation.[101]

Last, Count IV of the Complaint alleges Contractual Indemnity under the Separation Agreement against Michael Blum.[102] In paragraph 28 of their post-trial brief in the Prior Litigation, the Prior Litigation plaintiffs state, "[p]ursuant to the Separation Agreement, Blum agreed to indemnify and hold harmless the Plaintiffs against any claims arising out of or resulting from, directly or indirectly, Blum's breach of the Separation Agreement."[103] The issue of indemnity in the current case involves the same transaction or common nucleus of facts as in the Prior Litigation because it was raised in the Prior Litigation.

### 2. *Substantial Overlap with the Prior Litigation.*

The Feenix Entities maintain that while "the Prior Litigation is admittedly related to the instant action" it is not so related as to warrant dismissal.[104] The Feenix Entities argue that the Blums are conflating the harm resulting from the December Letter with the

---

[99] *Id*. at 21-22.
[100] *See* Mot. to Amend; Mot., Ex. 2 ("Proposed Amended Complaint") ¶¶ 103-106.
[101] *See* Proposed Amended Complaint.
[102] Compl. at 22-23.
[103] *See* Mot, Ex. 4 at 9.
[104] Pls.' Opp'n at 16.

actions that led to the December Letter.[105]  The Feenix Entities seek to have the Court

distinguish between "Defendants' misappropriation of the Feenix entities' confidential,

proprietary information via a letter from an attorney representing PBM" with the

"conspiracy between [Jeffrey] Blum and [Michael] Blum and the disclosure of Plaintiffs'

confidential information."[106]  As discussed in *Goureau v. Lemonis*, the Feenix Entities

ignore the extensive overlapping between this action and the Prior Litigation.[107]

In *Gouraeu*, plaintiffs filed two complaints on the same day, one in New York

asserting derivative claims on behalf of plaintiffs' entity, and one in the Delaware Court

of Chancery asserting derivative claims on behalf of the parties' new holding

company.[108]  The claims stemmed from the plaintiffs' appearance on a TV show called

*The Profit*, similar to shark tank, where individuals would seek investments from

Lemonis (defendant) for their companies.[109]  Plaintiffs alleged that through a series of

actions, defendant induced them into debt and forced plaintiffs into a holding company

where they continued into substantial debt.[110]  The court held that the plaintiffs had

engaged in claim splitting.[111]  Plaintiffs attempted to argue that the New York Action

"focused on the events surrounding *The Profit*" and their episode; where the "Delaware

action focuses on the parties' subsequent business relationship."[112]  The court was not

---

[105] *Id.*

[106] *Id*. at 17.

[107] *See* 2021 WL 1197531, at *9 (Del. Ch. Mar. 30, 2021).

[108] *Id.* at *1.

[109] *Id.* at *2.

[110] *Id.* at *2-5.

[111] *Id*. at *8.

[112] *Id.* at *9.

16

persuaded by this argument. The court noted that the two actions had extensive overlapping and arose from a connected series of transactions.[113]

This case is similar to the one in *Gouraeu*. Here, the Feenix Entities assert that the Prior Litigation only concerned the December Letter, and this action concerns the actions leading up to the December Letter. At its core, however, the central focus of both complaints is Michael Blum's purported misuse of the Confidential Information which were divulged to him by Jeffrey Blum.[114]

The Feenix Entities assert that they were "foreclosed" from presenting the instant claims in the Prior Litigation.[115] That is not so. The Prior Litigation plaintiffs filed the Motion to Amend in the Prior Litigation on October 13, 2023.[116] Michael Blum filed his opposition on October 17, 2023.[117]

The Court held a status conference on October 18, 2023 to discuss outstanding motions and any pending discovery issues.[118] A review of the status conference is revealing. First, the Prior Litigation plaintiffs had acquired new counsel and new counsel conveyed to the Court that, "relatively little discovery that had been taken by our predecessor or by the parties prior to our entry into the case, and including, most critically, depositions, which did not occur after we appeared in the month of August."[119]

---

[113] *Id.* ("But the line Plaintiffs seek to draw is blurred by the two actions' extensively overlapping allegations, which span from the Plaintiffs' initial application for *The Profit* in 2014 through Lemonis' looting of their businesses in 2020.").

[114] *See Maldonado v. Flynn*, 417 A.2d 378, 381 (Del. Ch. 1980) ("The modern transactional view of the doctrine of res judicata, however, does not require that the claims subsequently asserted be based on a same cause of action to be barred, but permits the doctrine to be invoked to bar litigation between the same parties if the claims in the later litigation arose from the same transaction that formed the basis of the prior adjudication.").

[115] Pls.' Opp'n at 10.

[116] Mot. to Amend.

[117] *See* Prior Litigation, Def.'s Resp. to Pls.' Mot. for Leave to file Amended Compl. (D.I. 143).

[118] *See* Prior Litigation, Official Transcript (hereinafter "Status Conference Tr.") (D.I. 149).

[119] Status Conference Tr. at 11:9-16.

17

Counsel further noted, that it was "through the course of those depositions, and the testimony that we developed in those depositions, that lead us to filing the motion for leave to amend."[120] Counsel stated, "that in the absence of amendment and appropriate modification to consolidate all of the claims into a single proceeding, there would end up being a second lawsuit filed."[121]

In response, the Court noted the late filing of the Amended Motion.[122] Counsel for Prior Litigation plaintiffs entered into the case in June of 2023 and had the opportunity to explore any potential issues surrounding the case, including discovery deadlines and expert reports.[123] Pursuant to the Prior Litigation's Case Management Order, the deadline to identify expert witnesses and to submit expert reports was August 11, 2023, which the Prior Litigation plaintiffs did not meet.[124] As for the Motion to Amend, the Court stated the following, "I've got a motion for leave to amend the complaint, and I've got a response. Let's get a reply into it as fast as possible so that I can have a hearing on that as soon as possible."[125] Last, the Court stated that if the parties submitted the requested documentation, then the Court would get the parties a

[120] *Id.* at 11:17-20.
[121] *Id.* at 12:13-19.
[122] *Id.* at 13:3-6.
[123] *Id.* at 13:7:-14. The Court noted:
> And it is not as if you hadn't looked at the Case Management Order before September, because I think as late as June 23rd of this year, you, as new counsel, asked for me to enter a order to modify the Case Management Order to change some dates. Why wasn't it done, Mr. Hare, at that point to address the other issues? You didn't look at the other issues regarding discovery deadlines and experts, and things like that, when you asked for the extension – or the change in privilege logs, and the like, back in June?

*Id*. at 13:7-19.
[124] *Id.* at 24:2-8.
[125] *Id.* at 25:23, 26:1-4. The Court also stated the following:
> Now if Plaintiff wants to file a motion to amend the Case Management Order with its dates and shows why these will work within the time frame of the trial, I will hear all of those things at the same time; the motion to amend the complaint, and that request. So, Mr. Hare, you need to – Plaintiffs need to get something on file with the Court that demonstrates that these deadlines will work for the December deadline. Okay?

*Id*. at 28:8-19.

18

decision on the Motion to Amend within two weeks.[126]  The Court was ready and willing to rule on the request to add: (i) Jeffrey Blum as a defendant; and, (ii) a claim for civil conspiracy.  However, the Prior Litigation plaintiffs decided to withdraw the Motion to Amend.[127]

The Feenix Entities had a full and fair opportunity to present all the claims that arose out of any purported disclosures and from Michael Blum's actions.[128]  The assertion that the Feenix Entities could not bring all their claims in the Prior Litigation is belied by the record.  The Feenix Entities rely on *Balin v. Amerimar Realty Co.*, to support their argument; however, in *Balin* the court held that the plaintiffs could not bring all their claims against defendants in one action because of jurisdictional issues.[129]  The court determined the plaintiffs had not engaged in claim splitting because not all the parties were subject to personal jurisdiction in Delaware.[130]  That is not the case here.

As the Court has held:

> [W]here a plaintiff has had a full, free and untrammeled opportunity to present his facts, but has neglected to present some of them or has failed to assert claims which should in fairness have been asserted, he will ordinarily be precluded by the doctrine of [claim splitting] from subsequently pressing his omitted claim in a subsequent action.[131]

When weighing the factors at issue, the Feenix Entities knew of or could have known of these claims during the Prior Litigation because the claims concern the same common nucleus of facts, as evidenced by the Motion to Amend.  The Feenix Entities

---

[126] *Id.* at 29:6-13.

[127] *See* Prior Litigation, Stipulation and Order Regarding Withdrawal of Plaintiffs' Motion (D.I. 154).

[128] *See Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *18 (Dec. 23, 2008) ("Claim splitting is meant to prevent burdening the same defendant with duplicative proceedings in different courts brought by the same plaintiff based on different causes of action arising out of a common nucleus of facts.").

[129] *See* 1995 WL 170421, at *4 (Del. Ch. Apr. 10, 1995).

[130] *Id.*

[131] *J.L. v. Barnes*, 33 A.3d 902, 918 (Del. Super., 2011) (quoting *Mells v. Billops,* 482 A.2d 759, 761 (Del. Super. 1984) (internal citations and quotation marks omitted) (alterations in original).

had ample opportunity to discovery Jeffrey Blum's involvement through discovery of the Prior Litigation. Moreover, the Feenix Entities were given an opportunity to add Jeffrey Blum as a defendant. Additional claims against Michael Blum could have been added in the Prior Litigation and the Feenix Entities had every opportunity to know of the claims as they all concern Michael Blum's actions after his May 2020.[132]

## C. *MCWANE*

The Court is dismissing the Complaint due to claim splitting. Accordingly, the Court will not address the Blums' *McWane* arguments.

## D. VEXATIOUS LITIGATION

Last, the Blums make an argument for fees as they assert they "are entitled to some finality of the claims brought against them as a result of the December Letter."[133] The Blums aver they are entitled to sanctions and attorney fees because the Feenix Entities brought this claim "for an improper purpose, such as harassment, or for needlessly increasing the cost of litigation."[134] The Feenix Entities assert that as a matter of procedure and substance this claim for sanctions should be denied.[135]

"Superior Court Civil Rule 11(c) provides a trial judge with authority to impose an 'appropriate sanction' on attorneys who violate Rule 11(b), but only after notice and a reasonable opportunity to respond."[136] Further, courts typically reserve sanctions "for those instances where the Court is reasonably confident that an attorney does not have an objective good faith belief in the legitimacy of a claim or defense."[137]

---

[132] *See* Prior Litigation, Complaint (D.I. 1).
[133] Mot. at 18-19.
[134] *Id.* at 19.
[135] *See* Pls.' Opp'n at 23-24.
[136] *Crumplar v. Superior Court ex rel. New Castle County*, 56 A.3d 1000, 10005 (Del. Supr. 2012).
[137] *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2020 WL 6588903, at *6 (Del. Super. Nov. 10, 2020) (internal quotation marks omitted).

While the Feenix Entities have engaged in claim splitting, the Court does not find that the conduct is so egregious as to warrant an imposition of sanctions. Moreover, the Court notes that none of the cases addressing claim splitting award sanctions or attorney fees. The Court does not believe that sanctions are warranted here. Therefore, the Court will follow the American Rule that "ordinarily, a litigant must, himself, defray the cost of being represented by counsel."[138]

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion and dismisses the Complaint. The Court **DENIES** the request for attorney's fees.

Dated: August 19, 2024
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc: File&ServeXpress

---

[138] *See In re Delaware Public Schools Litigation*, 312 A.3d 703, 721 (Del. Supr. 2024).

21